United States District Court
Middle District of Pennsylvania

Michael Lee Gordon,
         Plaintiff,

                                                    4-23-2019

- VS -

FILED
SCRANTON

APR 11 2019

PER _____
DEPUTY CLERK

(FNU) Buebendorf, S.I.S.;
(FNU) Hurley, Correctional officer;
(FNU) Leo, Lieutenant;
(FNU) Eigenbrode, Psychologist;
(FNU) Hicks, Case Manager;
(FNU) Gemberling, Counselor;
Several unknown S.I.S. officers;
Several unkown Correctional officers;
(FNU) Barbella, correctional officer;
(FNU) Gass, Education Department;
(FNU) Edinger, C.D./ M.D.;
(FNU) Hicks, Safety Manager;
(FNU) Shuck, Counselor;
(FNU) Rajjoub, Medical Doctor; Defendants.

Case No. #

3:19CV626

"Jury Trial Demand"

## Complaint

    * Note: My life, safety and personal well-being is in an imminent threat of danger of a serious physical harm, injury and/or death here at USP Lewisburg at the filing of this complaint!
    Now Comes, Michael Lee Gordon, pro se who brings this action pursuant to 28 USC 1983 and does sue each defendant in their individual and official capacities for violations of his constitutional rights to be free from cruel and unusual punishments, to due process and for various acts of retaliation and discrimination, for forfeiture of ninety-one (91) books of United States Postage stamps,

cont'd! and other rights retained by Plaintiff; thereby placing Plaintiff's life, safety, and personal well-being in an imminent threat and imminent danger of a serious physical harm, injury and/or death for the soul purpose to retaliate, discriminate, to deny Plaintiff Due Process and/or to subject Plaintiff to Cruel and Unusual Punishment; because Plaintiff is a Transgender and Plaintiff did utilize his constitutional Due Process rights to file grievances and to petition for redress of those grievances, and to petition this Honorable Court for redress.

Procedural History

Statement Of Material Facts

Claim I: Discrimination and Retaliation

1) On 12-13-2018, I did personally hand in an inmate request to staff (i.e. cop-out) to request that Psychology staff here at USP Lewisburg to enter a Case Management Activity (C.M.A.) assignment into Sentry concerning Plaintiffs gender identity to request this CMA assignment to identify Plaintiff as a transgender to all staff members. (see attached CMA assignment).

2) On 12-19-2018 @ 9:30 A.M., (F.N.U) Buebendorf, S.I.S. wrote a false misbehavior report to discriminate and retaliate against Plaintiff; specifically because Plaintiff is a transgender; whereby Plaintiff attempted to write to another transgender who was incarcerated at USP Tucson and was Plaintiff's previous cellmate. (see attached incident report)

Cont'd:

* *Note:* This incident report was later expunged because it was determined that no rule was violated and these types of incident reports are never written against other inmates who attempts to write directly to another inmate. This rule violation is only used when an inmate attempts to "circumvent" the mail procedure and not when inmates write directly through to other inmates, as *Plaintiff done!*

3) On 12-21-2018, I did speak with the Psychology departments (F.N.U.) Eigenbrode and did sign a BP-A1110 form Case Management Activity (CMA) Sentry assignment form for Transgender inmates, requesting that identity.

4) On 1-3-2019, I initiated an Administrative Remedy against (F.N.U.) Buebendorf, S.I.S., for discrimination and retaliation against me for being a transgender, by writing a false misbehavior report. (See Attached BP-8, 9, 10)

5) On 1-7-2019, my cellmate at that time (William Bayne) decided that he did not want to be my cellmate because I am a transgender; so we both handed in inmate requests to be separated, specifically because I am a transgender.

6) On 1-7-2019, (FNU) Hurley, C.O.; (F.N.U.) Leo, Lieutenant; and unknown S.I.S. officer; (F.N.U.) Hicks, case manager; and (F.N.U.) Eigenbrode did personally, knowingly, purposefully, and intentionally attempt to place my life, safety and personal well-being into an imminent threat of danger;

Cont'd:

harm, injury, and/or death by attempting to place me into a cell (ie cell #308) with inmate Mills from Washington, D.C. who is a known sexual predator and was also under investigation after being accused of committing a Prison Rape Elimination Act (P.R.E.A) violation of sexual assault upon another inmate who was his last cellmate.

7) On 1-7-2019, I refused to go to cell #308 and (F.N.U.) Leo, Lieutenant, threatened me to "find a cellie or you will be written an incident report", or "I could put you somewhere where you will not enjoy what will be done to you."

* Note: Subsequently, ① Joshua Rivera received a cellmate (whose name is unknown) from cell #311; ② cell #317 (whose name is unknown) was moved to cell #309 (with inmate named Mills) with the same inmate from Washington, D.C. who was previously in cell #308 and the same inmate that (F.N.U) Hurley, C.O.; (F.N.U) Leo, Lieutenant; and unknown S.I.S. officer; (F.N.U.) Hicks, case manager; and (F.N.U.) Eigenbrode did personally, knowingly, purposefully and intentionally attempt to place my life, safety and personal well-being into an imminent threat of danger, harm, injury and/or death by attempting to place me into a cell (ie cell #308) with on 1-7-2019 while he was pending as SIS investigation for a Prison Rape Elimination Act (P.R.E.A) violation.

Cont'd!

8) Since 1-7-2019 Z have found "several" inmates that Z would be compatible with (i.e. Joshua Rivera, Tyler Miller, William Mexican and James Mitchell) and all were refused, denied and/or ignored. (see Attached Inmate requests).

9) On 2-22-2019, Z spoke to (F.N.U.) Hurley @ 10:30 a.m. to ask why Z was being denied a cellmate despite (F.N.U.) Leo, Lieutenants threats and (F.N.U.) Hurley stated: "You are a transgender, you want to be a transgender, you made the choice to be a transgender, Z didn't." Then he further stated: "If you continue to file you are gonna get a cellie. We will find the biggest, meanest, horniest, black mother-fucker that we got." (i.e. Then he laughed) Further stating: "You are in the right prison for that shit you dick sucker."

10) Subsequently, after the conversation (i.e. threats) with (F.N.U.) Hurley Z received written notes from other inmates telling me that (F.N.U.) Hurley; (F.N.U.) Leo, Lieutenant; and other officers are telling inmates that Z am on "Predator status", or that Z am a "sexual predator", and/or other similar comments further placing my life, safety, and personal well-being in an imminent threat and imminent danger of a serious physical harm, injury and/or death. (see Attached)

11) On 10-29-2018 (F.N.U.) Hurley wrote a false misbehavior report for having a weapon; which was later expunged as being false. (i.e at DHO)

⑥

Cont'd!

12) On 3-25-2019, @ 8:00 A.A, (F.N.U.) Leo, Lieutenant, ordered (FNU) Barbella, correctional officer, to search my cell and write an incident report "on something, whatever you think will stick. Make up something if you have to."

13) On 3-25-2019 @ 8:17 A.A,, (F.N.U.) Barbella, correctional officer, searched my cell and did confiscated/forfeited "(91) books of US Postage stamps. Furthermore, (FNU) Barbella, correctional officer, falsified an incident report whereby he lied stating: "During the course of the search I located numerous gambling slips." There was never any gambling slips found in my cell on 3-25-2018, and (FNU) Barbella wrote a false misbehavior report; just as (FNU) Leo, Lieutenant ordered him to do. (see attached fraudulent incident report).

14) On 3-25-2019 @ 8:17 A.A,, (FNU) Barbella, correctional officer, denied me due process of law and retaliated against me when he did confiscate/forfeit ninety-one (91) books of postage stamps in a retaliatory and discriminatory manner because ① I am a transgender and ② I filed Administrative Remedies and ③ I plan to file a civil action on "several" officials here at USP Lewisburg.

15) On 3-25-2019 @ 8:17 A.M, (FNU) Barbella, correctional officer, denied me due process of law by confiscating ninety-one (91) books of postage stamps without an Administrative action permitting

cont'd:

him to do so; or without any adjudication available for me to challenge the confiscation of said property, or the option to send them home.

16) On 3-11-2019 and 3-18-2019, (FNU) Gass, Education Department, refused and denied to copy my legal papers inconnection with this civil action in a discriminate and retaliatory manner. I requested (FNU) Gass, education department, to copy an Administrative Remedy (ie. BP-10) form Remedy No. #964915-R1; whereby I filed an Administrative Remedy against (F.N.U.) Biebendorf, SIS officer, for his actions maintained in this Civil action and (FNU) Gass, education department, refused and denied to make me copies two (2) times; despite me notifying (FNU) Gass, education department, that my request was legal in nature. Thus, thereby his actions were retaliatory in nature. (see Attached)

17) On 4-9-2019, (FNU) Gemberling, counselor, refused and denied me the Administrative Remedy process. Furthermore, the whole time that Plaintiff has been incarcerated here at USP Lewisburg (ie since october 22, 2018) (FNU) Gemberling, counselor, has denied, refused, ignored and/or delayed Plaintiffs Administrative Remedy Process limiting Plaintiff to only one (1) BP-8 Administrative Remedy at a time; thereby only allowing Plaintiff to file a total of two (2) Administrative Remeddies

Cont'd:

per month causing Plaintiff to abort, disregard and/or simply not file Administrative Remedies. These denials, refusals and/or delegals have caused Plaintiff's Administrative Remedies to be rejected as untimely because Plaintiff must file and initiate any Administrative Remedy Process within twenty (20) days after the event complained about, so Plaintiff was denied and refused an "available" Administrative Remedy Process by, (FNU) Gemberling, counselor, in a discriminate and retaliatory manner.

18) On 3-26-2019, (FNU) Shuck, counselor, was conducting my Unit Disciplinary Committee (UDC) hearing and after finding me guilty of the false misbehavior report written by officer Barbella, (FNU) Shuck stated: "You have the right to appeal my decision, and just because you like to file so much - I know you will; and then handed me a rejection notice in Remedy #966087-A1."

Claim II: Denial and refusal of appropriate medical care and cruel and unusual punishment.

1) On 11-9-2017, I injured my lower back whereby I experience "severe" pain (on a scale of 1 to 10 with 1 being the least and 10 being the worst pain possible) all day long I experience 8 to 9 pain.

2) On 2-1-2019 an M.R.I. was completed and concluded that:

* 1.) L4-L5: There is a 3-4 mm broad-based central disk herniation with anular fissure and possible impingement on both traversing L5 nerve roots (series 4, images 8 through 5). Minimal bilateral foraminal stenosis.

* 2.) L5-S1: A 3-4 mm posterior central disc

cont'd!

herniation with mild superimposed broad-based disk bulge. No obvious nerve impingement (series 6, image 3 and series 4, image 6).

\* 3) L3-L4: A 2 mm broad-based disk bulge with mild effacement of intrathecal sac.

\* 4) A 9-degree levoscoliosis as measured from the superior endplate of L2 to the inferior endplate of L5.

(see Attached MRI results).

3) On 2-10-2019, I wrote Dr. Edinger asking to be prescribed a different pain/nerve medication to alleviate the pain in my back notifying Dr. Edinger that my currently prescribed medication (i.e. Elavil) was not helping at all.

In response Dr. Edinger wrote:

"First, there are no medicines to resolve your pain. Second, there no medicines that I would say are "Good" options. Third, you have already tried Duloxetine, Amitriptyline, and Gabapentin for this problem. Last, you have a significant history of drug abuse/misuse which further complicates the problem. What has worked for you in the past?" (end quote).

(see Attached cop-out).

4) On 2-20-2019, Z wrote back to Dr. Edinger and notified Dr. Edinger that the previously prescribed medication "Gabapentin" has not been prescribed since the latest accident, however, it did alleviate the pain alot better than everything else that Z have tried since then.

Z n Response Dr. Edinger wrote:

"Z am awaiting Neurosurgery's Recommendations" (end quote)
(see Attached cop-out)

5) On 3-19-2019, Z again wrote back to Dr. Edinger and notified Dr. Edinger that on 3-14-2019 Z went out to the outside hospital to speak with the Neurosurgeon and that the Neurosurgeon recommended that Z try a Hydrocortisone injection supplemented with some type of pain/nerve medication to alleviate the pain.

Z n response Dr. Edinger wrote:

"You have taken Neurotin in the past without much success. Zt may have also caused some problem with Hallucinations. The Qcarbazapin has been studied in people with your conditions. Zt has been

Cont'd!

found to not be effective. Your best bet may be to just stick with Zbruprofen," (end quote)
(see Attached cop-out)

6) On 3-25-2019, I again wrote back to Dr. Edinger about my "severe" lower back pain requesting something other than Zbruprofen and notifying Dr. Edinger that Zbruprofen is <u>not</u> working <u>nor</u> is it healthy for me to continue taking huge amounts of Zbruprofen.

In response Dr. Edinger did <u>not</u> write back and rejected, refused, denied and/or ignored my inmate request on 3-25-2019.

7) On 4-1-2019, I again wrote to Dr. Edinger about my "severe" lower back pain requesting something other than Zbruprofen and Dr. Edinger wrote back stating Epidural injections - "This option may help with nerve pain down your leg, but is unlikely to have any impact on back pain." (see Attached recommendation by Dr. Rajjoub)
*** Note! On 3-26-2019, I spoke to the Supervisory Psychologist, Mrs. Enik, and inquired about whether or not, and if so; why was I placed on "Predator status?" Mrs. Enik, Supervisory Psychologist, advised me that it was called "Risk of sexual abusiveness" status, and told me that she would look into it. Either way, staff telling inmates this has placed my life, safety, and personal well-being in danger of harm, injury and/or death.

Cont'd!

8) On 4-5-2019, I received a response from
Dr. Edinger to my inmate request (ie. cop-out)
dated 4-1-2019 whereby (F.N.U.) Rajjoub, Medical
Doctor notated under "Patient Instructions":

Dr Rajjoub does not recommend surgery at
this time.

Please continue with conservative measures
including use of Ibruprofen, stretches and
exercises.

We can try set of epidural injections if
he would like.

cont'd! ———————— Claims ————————

1) (FNU) Buebendorf, SIS, personally, knowingly, purposefully, intentionally, recklessly, sadisticly and/or maliciously discriminated and retaliated against me to torment, torture and harrass me because I am a transgender; by writing a false misbehavior report for all of the same, and further acts unknown to Plaintiff at this time.

2) (FNU) Hurley, correctional officer, personally, Knowingly, purposefully, intentionally, recklessly, sadisticly and/or maliciously discriminated and retaliated against me to torment, torture and harrass me because I am a transgender and I filed complaints against (FNU) Hurleys and co-workers; by threatening, writing a false misbehavior report and placing Plaintiffs life, safety and personal well-being in an imminent threat of danger, injury and/or death by fabricating and falsifying lies about Plaintiff and telling other inmates that Plaintiff is on "Predator status" or a "sexual predator" and trying to place Plaintiff into a cell with a known "sexual Predator" who was under investigation by the S.I.S. department for sexually assaulting his last cellmate, and further acts unknown to Plaintiff at this time.

3) (FNU) Leo, Lieutenant, personally, knowingly, purposefully, intentionally, recklessly, sadisticly and/or maliciously discriminated and retaliated against

cont'd!

me to torment, torture and harrass me because I am a transgender and I filed complaints against (FNU) Leo's 3 co-workers; by threatening Plaintiff and placing Plaintiff's life, safety and personal well-being in an imminent threat of danger, injury and/or death by fabricating and falsifying lies about Plaintiff and telling other inmates that Plaintiff is on "Predator status" or a "sexual Predator" and trying to place Plaintiff into a cell with a known "sexual Predator" who was under investigation by the S.I.S. department for sexually assaulting his last cellmate, and further acts unknown to Plaintiff at this time.

4) (FNU) Eigenbrode, Psychologist, personally, knowingly, purposefully, intentionally, recklessly, sadisticly and/or maliciously discriminated and retaliated against me to torment, torture and harrass me because I am a transgender and I filed complaints against (FNU) Eigenbrode's 3 co-workers by placing Plaintiff's life, safety and personal well-being in an imminent threat of danger, injury and/or death by fabricating and falsifying lies about Plaintiff and telling officers Plaintiff is on "Predator status" or a "sexual Predator" and trying to place Plaintiff into a cell with a known "sexual Predator" who was under investigation by the SIS department for sexually assaulting his last cellmate, and further acts

cont'd:

unknown to Plaintiff at this time.

5) (FNU) Hicks, case manager, personally, knowingly, purposefully, intentionally, recklessly, sadisticly, and/or maliciously discriminated and retaliated against me to torment, torture and harrass me because I am a transgender and I filed complaints against (FNU) Hicks' co-workers by placing Plaintiff' life, safety, and personal well-being in an imminent threat of danger, injury, and/or death by fabricating and falsifying lies about Plaintiff and telling officers Plaintiff is on "Predator status" or a "sexual Predator" and trying to place Plaintiff into a cell with a known "sexual Predator" who was under investigation by the S.I.S department for sexually assaulting his last cellmate, and further acts unknown to Plaintiff at this time.

6) (FNU) Gemberling, counselor, personally, knowingly, purposefully, intentionally, recklessly, sadisticly and/or maliciously discriminated and retaliated against me to torment, torture and harrass me because I am a transgender and I filed complaints against (FNU) Gemberling and co-workers for placing Plaintiffs life, safety, and personal well-being in an imminent threat of danger, injury, and/or death for fabricating and falsifying lies about Plaintiff in that Plaintiff is on "Predator status" or a "sexual Predator" and refused, denied and delayed Plaintiff the

cont'd:

Administrative Remedy Process by limiting Plaintiff to one (1) BP-8 Administrative Remedy at a time; thereby only allowing Plaintiff to file a total of two (2) Administrative Remedies per month causing Plaintiff to abort, disregard and/or simply not file Administrative Remedies. These denials, refusals and/or delays caused Plaintiffs' Administrative Remedies to be rejected and in other instances Plaintiff was out right unable to file any Administrative Remedy because Plaintiff only has twenty (20) days after the event complained about; so Plaintiff was denied and refused an adequate, effective and "available" Administrative Remedy Process by (FNU) Gemberling, counselor, and further acts unknown to Plaintiff at this time.

7) Several unknown S.I.S. officers, personally, knowingly, purposefully, intentionally, recklessly, sadistricly and/or maliciously discriminated and retaliated against me to torment, torture, and harrass me because I am a transgender and I filed complaints against them and/or their co-workers, by placing Plaintiffs' life, safety and personal well-being in an imminent threat of danger, injury and/or death by fabricating and falsifying lies about Plaintiff and telling others that Plaintiff is on "Predator status"

cont'd:
or a "sexual Predator" and trying to place
Plaintiff into a cell with a Known "sexual
Predator" who was under investigation by the
S.I.S. department for sexually assaulting his
last cellmate, and further acts unknown
to Plaintiff at this time.

8) Several unknown Correctional Officers, personally,
Knowingly, purposefully, intentionally, recklessly,
sadisticly and/or maliciously discriminated and
retaliated against me to torment, torture
and harrass me because I am a
transgender and I filed complaints
against them and/or their co-workers; by
placing Plaintiffs life, safety and personal
well-being in an imminent threat of
danger, injury and/or death by fabricating
and falsifying lies about Plaintiff
and telling others that Plaintiff is on
"Predator status" or a "sexual Predator"
and trying to place Plaintiff into a
cell with a Known "Sexual Predator"
who was under investigation by the
S.I.S. department for sexually assaulting
his last cellmate, and further acts
unknown to Plaintiff at this time.

9) (FNU) Barbella, correctional officer, personally,
Knowingly, purposefully, intentionally, recklessly,
sadisticly and/or maliciously discriminated and
retaliated against me to torment, torture

cont'd!

and  harrass me because Z am a transgender
and  Z filed complaints against him and/or
his  co-workers; by denying me due process
of law and confiscate/forfeit  ninety-one  (91)
books of postage stamps without an
Administrative action permitting him to do
so; or without any adjudication available
for me to challenge the confiscation
of said property, or the option to send
them home, and also wrote a false misbehavior report.

10.) (FNU) Gass, Education Department, personally,
Knowingly, purposefully, intentionally, recklessly,
sadistically and/or maliciously discriminated
and retaliated against me to torment,
torture and harrass me because Z am
a transgender and Z filed complaints
against them and/or their co-workers; by
refusing and denying to copy my legal
papers inconnection with this civil action
in a discriminate and retaliatory manner.
Z requested (FNU) Gass, education department,
to copy an Administrative Remedy (ie BP-10)
form and response Remedy No.# 964915-R1;
whereby Z filed a complaint against (FNU)
Buebendorf, SIS, for his actions maintained
in this civil action and (FNU) Gass,
education department refused and denied to
make me copies two (2) times; despite me
notifying him they were legal in nature.

cont'd:

11) (FNU) Edinger, clinical director/Medical doctor; personally, knowingly, purposefully, intentionally, recklessly, sadisticly and/or maliciously is denying, refusing and delaying me medical care for a physically debilitating spinal injury, whereby Plaintiff is in "severe" pain all day long from an injury upon which an outside Neurosurgeon said that there is "no operation" that would help fix nor diminish your back pain; and (FNU) Edinger is using Plaintiffs medical illness to torture, torment and induce cruel and unusual punishment upon Plaintiff; by refusing, denying and delaying Plaintiff's medical treatment for pain and also prescribing Plaintiff medication that is harmful to Plaintiff and has no effect to alleviate Plaintiffs pain.

(FNU) Edinger, clinical director/Medical doctor; has refused, denied and rejected Plaintiffs requests for a Hydrocortisone injection into the spinal area, Plaintiffs request for Nurotin, Gabapentin and/or oxcarbazepin; all of which were recommeded by the Neurosurgeon.

(FNU) Edinger, clinical director/Medical Doctors treatment of 800 mg Ibruprofen three (3) times per day is unhealthy and would have more damaging affects

cont'd:

on Plaintiffs body then the good that it would do. The Neurosurgeon told me that he wouldn't recommend 800 mg Ibruprofen three (3) times per day for anybody "longer" than ten (10) days at a time; so therefore (FNU) Edinger is pursueing medical treatment that he knows or should know would be detrimental to my health and personal well-being.

(2) (FNU) Hicks, safety manager, personally, knowingly, purpose fully, intentionally, recklessly, sadisticly, and/or maliciously is denying, refusing and delaying me due process of law. I did sustain a work-related injury while on-the-job in the food service department while confined at USP Tucson on 11-9-2017. This injury was determined to be a work related injury. I was approved payment of lost time wages.

Per section 301.204 inmate accident compensation and Regulations Governing inmate accident compensation procedures I should be provided a continuation of lost time wages.

(FNU) Hicks, Safety manager, is denying me due process, the Administrative Remedy process and my continuation of lost time wages, of $50.00 per month that was already previously approved.

Cont'd!

13) (FNU) Shuck, counselor, on 3-26-2019, personally, knowingly, purposefully, intentionally, recklessly, sadisticly, and/or maliciously discriminated and retaliated against me to torment, torture and harass me (because I did file a complaint against his co-workers); by finding me guilty of a false misbehavior report for all of the same, and further acts unknown to Plaintiff at this time.

On 3-26-2019, (FNU) Shuck, counselor, was conducting my Unit Disciplinary Committee (UDC) hearing and after finding me guilty of this false misbehavior report written by officer Barbella, (FNU) Shuck stated: "You have the right to appeal my decision, and just because you like to file so much - I know you will"; and then handed me a rejection notice in Reed's # 966087-A1. Then stated: "Keep filing and you will keep getting these." Holding up the false misbehavior report.

14) (F.N.U.) Rajjoub, Medical Doctor, personally, knowingly, purposefully, intentionally, recklessly, sadisticly, and/or maliciously is denying, refusing and/or delaying me medical care for a physically debilitating spinal injury whereby Plaintiff is in "severe" pain all day long from an injury whereby (FNU) Rajjoub stated: "there is "no operation" that would help, fix nor diminish your back pain; and has further committed Medical Malpractice by recommending "use of Ibraprofen, stretches and exercises"; whereby such treatment of Plaintiff consuming three (3) 800 mg Ibraprofen per day would cause harm to Plaintiff - amounting to Medical Malpractice, and pursueing treatment he knows is unaffected, and harmful to Plaintiff's life, health and personal well-being.

cont'd! ———————————— Relief ————————————

1) Plaintiff restates, realleges and incorporates herein by reference each of the allegations in the above paragraphs as if fully rewritten herein.

2) **Plaintiff "demands a trial" by jury!**

3) Plaintiff seeks nominal damages for the violation of each constitutional right found to have been violated, from each and every named defendant (separately and individually) found to have violated Plaintiffs constitutional rights; as well as the reimbursement for pain, suffering, companionship, kindness and comfort in excess of **$25,000.00.**

4) Plaintiff seeks compensatory damages for the violation of each constitutional right found to have been violated, from each and every named defendant (separately and individually) found to have violated Plaintiffs constitutional rights; as well as the reimbursement for pain, suffering, companionship, kindness and comfort in excess of **$25,000.00.**

5) Plaintiff seeks Punitive damages for the violation of each constitutional right found to have been violated, from each and every named defendant (separately and individually) found to have violated Plaintiffs constitutional rights; as well as the reimbursement for pain, suffering, companionship, kindness and

cont'd:
and comfort in excess of $25,000.00.

6) Plaintiff seeks nominal, compensatory and Punitive damages for all acts of retaliation from each and every named defendant (separately and individually) found to have retaliated or discriminated against Plaintiff; as well as the reimbursement for pain, suffering, companionship, kindness and comfort in excess of $25,000.00.

7) Plaintiff seeks Medical treatment in the form of either: ① Hydrocortisone injections into Plaintiffs spinal area; or ② to be prescribed pain/nerve medication.

8) Plaintiff seeks reimbursement of $1,000.00 for the confiscation of his personal property and the denial of his due process rights with regards to his personal property being confiscated.

9) Plaintiff seeks reimbursement of $50.00 per month to be awarded from November 9th, 2017, to the present; and that $50.00 to be awarded each month thereafter for reimbursement of continuation of lost-time wages.

(24)

## Certificate of Service

I hereby state that the foregoing is true and correct to the best of my ability, and that a copy of the same was mailed this 23rd day of April, 2019.

Respectfully, Michael Lee Gordon
#64459-061
USP Lewisburg
P.O. Box 1000
Lewisburg, PA
17837



BP-A1110   **Case Management Activity (CMA) SENTRY Assignment Form for Transgender Inmates**
JAN 17
**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

I agree that Bureau of Prisons staff may enter a CMA assignment on SENTRY concerning my gender identity.

I understand that this CMA assignment will identify me as transgender to all staff members.

I understand that the purpose of the CMA assignment is to assist staff members in providing programs and taking measures as described in the Program Statement **Transgender Offender Manual**.

I understand that specific medical and mental health information will not be disclosed to all staff using the CMA assignment; specific medical and mental health information is maintained separately.

Inmate Name: _Michall Lee Sle_ Michael Lee Gordon

Register Number: _#64459-061_

Signature: _Michal Lee SS_

Date: _12-21-2018_

BP-A0288
JAN 17

**INCIDENT REPORT**

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

---

**Part I – Incident Report**

| 1. Institution: USP Lewisburg | Incident Report Number: |
|---|---|

| 2. Inmate's Name:<br>GORDON, MICHAEL | 3. Register Number:<br>64459-061 | 4. Date of Incident:<br>12/18/2018 | 5. Time:<br>11:59PM |
|---|---|---|---|

| 6. Place of Incident:<br>X-Block, Cell 327 | 7. Assignment:<br>UNASSIGNED | 8. Unit:<br>BERKOSKI |
|---|---|---|

| 9. Incident:<br>Abuse of Mail; Sending Mail to Other Inmates without Authorization | 10. Prohibited Act Code (s):<br>CODE: 296 |
|---|---|

11. Description of Incident (Date: ___12/19/2018___ Time: 8:00AM   Staff became aware of incident):

On 12/19/2018, at 8:00AM, an inquiry concluded which revealed the following: during the Evening Watch shift of 12/18/2018, a two pieces of First Class US Mail were placed into the outgoing mail by inmate Gordon, Michael #64459-061 (X03-327). One piece of mail was addressed to "James Hall #09104-091, P.O. Box 24550, Tucson, AZ 85734", the other piece was addressed to "James Lindsey Hall, 435 N. 35th Avenue, #357, Greeley, CO 80631". The addressee is current BOP inmate Hall, James #09104-091, currently housed at USP Tucson. Inmate Hall was recently housed at the SMU at USP Lewisburg. According to the most current "Approved Inmate-to-Inmate Correspondence" list from ISM/Mail Room, inmate Gordon does not have approval to be in direct mail contact with inmate Hall. In the letter directly address to USP Tucson to inmate Hall, inmate Gordon states, "Why haven't you wrote to me bitch" I have done sent you like 5 or 6 letters, a Christmas card, and a thinking of you card and I haven't gotten nothing from you."

| 12. Typed Name/Signature of Reporting Employee:<br>S. Buebendorf | 13. Date And Time:<br>12/19/2018<br>9:30AM |
|---|---|

| 14. Incident Report Delivered to Above Inmate By  (Type Name/Signature): | 15. Date Incident Report Delivered:<br>12/20/18 | 16. Time Incident Report Delivered:<br>815AM |
|---|---|---|

**Part II – Committee Action**

17. Comments of Inmate to Committee Regarding Above Incident:

18. A. It is the finding of the committee that you:

_____ Committed the prohibited act as charged.

_____ Did not commit a prohibited act.

_____ Committed Prohibited Act Code(s): _____

B. ____ The Committee is referring the charge(s) to the DHO for further hearing.

C. ____ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision is Based on Specific Evidence as Follows:

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act):

21. Date and Time of Action: _____ (The UDC Chairman's signature certifies who sat on the UDC and that the completed report   accurately reflects the UDC proceedings).

Chairman (Typed Name/Signature): _____    Member (Typed Name): _____    Member (Typed Name): _____

INSTRUCTIONS:  All items outside of heavy rule are for staff use only.   Begin entries with the number 1 and work up.   Entries not completed will be voided by staff.

Copy Out

11-10-2018

TO: Mr. Berkowski / Unit Manager

From: Michael Lee Gordon                    X-Block
          #64459-061                              Cell# 325

Request

I hereby request "inmate-to-inmate correspondence" please. I request inmate-to-inmate correspondence with an inmate who is a witness in an up-and-coming civil action; whereby I plan to bring a civil action (i.e. 1983 Bivens suit) against Federal Bureau of Prisons officials employed at the United States Penitentiary located in Tucson, Arizona. This inmate-to-inmate correspondence request comes for the fact that this inmate is a witness and has completed 5 Affidavits on my behalf in connection with this civil action. The inmate that I request permission to correspond with is: James Lindsey Hall
#09104-091
USP - Tucson
P.O. Box 24550
Tucson, Arizona 85734

Thank You.

SOP-04

11-19-2018

TO: Mr. Berkoski / Unit Manager

From: Michael Lee Gordon          X-Block
      # 64459-061               cell # 326

———————— Request ————————

This is my second request for "inmate-to-inmate" correspondence wherein I request approval to correspond with an inmate who is a witness in civil litigation that I will be perfecting in the very near future. I request inmate-to-inmate correspondence with the following inmate:

> James Lindsey Hall
> # 09104-091
> USP Tucson
> P.O. Box 24550
> Tucson, Arizona
>                   85734

**\* P.S.:** I only request to be provided "Legal Correspondence" approval please!

Thank You.

Copy Out

11-26-2018

TO: Mr. Berkoski, Unit Manager

From: Michael Lee Gordon                    X-Block
      #64459-061                            cell# 326

---

                        Request                        ---

        I have made "several" attempts for
"inmate-to-inmate" correspondence with an
inmate who is a witness in a legal
matter inwhich I am a party in the
litigation.
        I need to have inmate-to-inmate
correspondence with this inmate because he
is a witness on my behalf.
        Can you approve this correspondence with
inmate:

        James Lindsey Hall
        #09104-091
        USP Tucson
        P.O. Box 24550
        Tucson, Arizona
                    85734

☀ P.S. I only request Legal correspondence
please?
                                Thank You.

12-3-2018

TO: Mr. Berkowski / Unit Manager

From: Michael Lee Gordon                    X-Block
           #64459-061                              cell# 326

_____ Request _____

        I was directed to contact you to request "inmate-to-inmate" correspondence with another inmate in another institution.
        This is the fourth cop-out that I have sent in requesting this inmate-to-inmate correspondence and I have _not_ recieved _any_ responses back.
        I need approval for "inmate-to-inmate" correspondence because I have a inmate who is a witness in a legal matter and I need to be approved legal correspondence permission.
        The inmate is:

James Lindsey Hall
#09104-091
USP Tucson
P.O. Box 24550
Tucson, Arizona
                    85734

✗ P.S. Can you make this approval please?

12-13-2018

TO: Mr. Berkoski/unit Manager


From: Michael Lee Gordon          X-Block
         #644-59-061              cell# 327

Request

I hereby request to be approved for "Inmate-to-Inmate Correspondence" with another inmate who is and will be a witness in an up-and-coming civil action please?

This "Inmate-to-Inmate Correspondence" that I request is with an inmate who has completed five (5) Affidavits on my behalf and this inmate will be a witness in an up-and-coming civil action. The inmates name and address are as follows:

James Lindsey Hall
#09104-091
USP Tucson
P.O. Box 24550
Tucson, Arizona,
                    85734

Can you approve this please? Thank You

YOUR REQUEST IS DENIED. INMATE TO INMATE
CORRESPONDENCE IS ONLY APPROVED FOR INMATES
IF YOU ARE BOTH INVOLVED IN LEGAL ACTIONS, AN
EXAMPLE WOULD BE COURT CASE NOT BECAUSE YOU
HAVE A CIVIL ACTION.

                         BERKOSKI      12-20-18

Statement To D.H.O
* pg. 1 of 2 *

12-23-2018

Dear chambers,

Inmate James Lindsey Hall inmate No. #091 04-091 was my cellmate when I was incarcerated at USP Tucson. Inmate James Lindsey Hall completed 5 or 6 Affidavits on my behalf and will be a witness on my behalf in an up-and-coming legal matter.

Inmate James Lindsey Hall notified me that his attorney notified him that James Lindsey Hall would win an appeal, be re-sentenced and released within 60-days; so James Lindsey Hall provided me his own personal home address and directed me to write him there because he (i.e. James Lindsey Hall) would soon be released and 435 N. 35th Ave, #357 Greeley, Colorado 80631 was his personal home address.

Upon arrival to USP Lewisburg, P.A I have made four (4) attempts by way of cop-out to Mr. Berkoski, unit manager, to request the approval of inmate-to-inmate correspondence. (see attached copies of cop-outs).

I also wrote 5 or 6 letters, a christmas card and a Thinking of you card; however, I never once abused, attempted to

Statement To D.H.O.

\* p.g. 2 of 2 \*

Cont'd:

deceive, attempted to circumvent nor did I ever once violate any Federal Bureau of Prisons rule violation.

Everything that I have mailed out of USP Lewisburg has had my name and inmate prisoner number as the return address and everything that I did send to inmate James Lindsey Hall inmate No. #09104-091 was addressed to him and was sent to James Lindsey Hall's personally known address.

\* Furthermore, Inmate James Lindsey Hall inmate No. #09104-091 has written 5 or 6 Affidavits on my behalf and is a witness in an up-and-coming legal matter; in which I made "several" attempts to obtain approval for inmate-to-inmate correspondence as evidenced by the cop-outs attached hereto.

I want 2 witness's called to this hearing. I want the ISM Supervisor and the mailroom Supervisor called as witnesses. If called as witness's they both will state that when mail is received at this institution from an inmate at another institution the mail is to be rejected and a rejection notice is to be sent out.

Accordingly, a rejection notice was the proper procedure to follow. A written incident report for violating a rule violation was not the proper procedure nor the normal procedure that is followed in this nor any other Federal Bureau of Prisons institution. Thank You.

LEW 1330.13D
ADMINISTRATIVE REMEDY PROGRAM
ATTACHMENT A

## INFORMAL RESOLUTION ATTEMPT # _18-208_

In accordance with Program Statement 1330.13, <u>Administrative Remedy Program</u>, this form will serve as documentation by the respective staff member and the unit manager to indicate an informal attempt to resolve the complaint of the following inmate:

NAME: _Michael Lee Gordon_     REG NO: _#64459-061_

FORM TO INMATE: _1-2-2019_     STAFF: _K. Gemberling X-BLOCK_
              (date)                          (name)      (unit)

*A BP-299 (13) WILL NOT ORDINARILY BE ACCEPTED WITHOUT THIS COMPLETED FORM ATTACHED*

1. NATURE OF COMPLAINT (to be completed by inmate): Handed in on 1-3-2018

The Special Investigative Service (SIS) department is retaliating against me because I am transgender; specifically S. Buebendorf and others are retaliating against me and breaking the law by committing and breaking Federal law (i.e. A Hate Crime) against me because I am transgender.

*1) My personal mail is being rejected, thrown away and/or discarded by the S.I.S. department sadistly and maliously for the soul reason that I am transgender.

* 2) Furthermore, on 12-19-2018 @ 9:30 A.M, I was written a false misbehavior report by an S Buebendorf, S.I.S, in retaliation because I am transgender. The writing of this misbehavior report was in retaliation and did violate federal law under the "Hate crime" statute because it was written sadistly and maliously to harrass, torment, punish, torture and cause me pain and suffering for the soul purpose of me being a transgender.

*** Note: I wrote to another transgender (i.e. James Lindsey Hall inmate No. #09104-091) by sending it directly to Tucson, Arizona with my name as the return address and inmate James Lindsey Hall being the recipient of the mail; so their was no abuse nor circomvention of the mail monitoring procedure. This type of mail is ussually "rejected" with no misbehavior report. However, in my case "because I am Transgender" I was written a misbehavior report. James Hall is a witness of mine in an up and coming legal matter!

*** Relief: 1) I want an investigation conducted by the S.I.A. into whether or not there has been a Hate crime committed. 2) I want this matter referred to the United States Attorney office with a refferral that S. Buebendorf SIS be prosecuted for a Hate Crime; 3) I want the misbehavior report for "Abuse of the mail" Expunged 4) I want to speak to S.I.A and file a complaint.

LEW  1330.13D
ADMINISTRATIVE REMEDY PROGRAM
ATTACHMENT A CONTINUED

**FOR STAFF USE ONLY:** (to be completed within 5 working days)

1. Date Received from inmate:  __01-04-2019__

2. Staff Member Assigned to Respond to U/M:  __D. Knapp__

3. Efforts Made to Resolve the Problem:

_____

_____

_____

_____

_____

_____

4. Applicable Program Statement Used in this Informal Resolution Attempt:

_____

5. Inmate's Response to Informal Remedy Attempt:

_____

_____

_____

_____

_____

_____

Prepared by:  __K. Gemberling/ Correctional Counselor__

Received by (U/M):  __C. Berkoski/ Unit Manager__  _C. Berkoski_

Original Returned to Inmate (Date):  __1/14/19__

cc:  Central File

Inmate Name:    Gordon, Michael
Inmate Reg. No. 64459-061
Quarters:       X-Block


In your Informal Resolution Attempt, received January 7, 2019, you claim staff retaliated against you because you are transgender. You further claim staff falsified an incident report. You are requesting staff be held accountable for their alleged conduct.

Staff misconduct is viewed very seriously. Staff conduct is governed by Program Statement 3420.11, Standards of Employee Conduct, dated December 6, 2013. An inquiry has been conducted regarding your claims, to include interviews with applicable staff and a review of documentation. No significant information was discovered to support your claims or show staff were negligent in their duties. Furthermore, records show you received an incident report for attempting to circumvent the mail procedures by communicating with other inmates without proper authorization.

Based on this evidence, your request for Informal Resolution is denied.



_____                    _____
J. Konkle, Captain                                    1-7-19
                                                      Date

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Gordon Michael Lea     #64459-061     X-Block     USP Lewisburg
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

Part A- INMATE REQUEST The S.I.S. department is retaliating against me because I am transgender; specifically S. Buebendorf and others are retaliating against me and breaking federal law (ie A Hate crime) against me because I am a transgender. On 12-19-2018 @ 9:30 AM, I was written a false misbehavior report by an S. Buebendorf S.I.S, in retaliation because I am a transgender. The incident report was written sadistly and maliciously to harrass, torment, punish, torture and cause me pain and suffering because I am a gay transgender.

The incident report was "expunged" and I was found not guilty of any prohibited violation! Incident reports are never written for this; However, because "I am a transgender" I was written an incident report. **Relief 1)** I want S. Buebendorf reprimanded. 2) I want to file a complaint with S.I.S. 3) I want a referral for Prosecution to the US Attorney.

1-14-2019                                        Michael Lee Gordon
DATE                                        SIGNATURE OF REQUESTER

Part B- RESPONSE

RECEIVED

JAN 16 2019

ADMIN REMEDY CLERK
USP LEWISBURG

_____          _____
DATE                              WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 964915-F1

                                    CASE NUMBER: _____

Part C- RECEIPT

Return to: _____     _____     _____     _____
           LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____          _____
DATE                              RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN          PRINTED ON RECYCLED PAPER          BP-229(13)
                                                    APRIL 1982

Admin. Remedy No.: 964915-F1
Part B- Response

## ADMINISTRATIVE REMEDY RESPONSE

This is in response to your Request for Administrative Remedy received
January 16, 2019, wherein you claim staff retaliated against you
because you are transgender. You further claim staff falsified an
incident report. You are requesting staff be held accountable for
their alleged conduct.

Staff misconduct is viewed very seriously. Staff conduct is governed
by Program Statement 3420.11, Standards of Employee Conduct, dated
December 6, 2013.  An inquiry has been conducted regarding your
claims, to include interviews with applicable staff and a review
of documentation.  No significant information was discovered to
support your claims or show staff were negligent in their duties.
Furthermore, records show you received an incident report for
attempting to circumvent the mail procedures by communicating with
other inmates without proper authorization.

In view of the above, there is no basis for relief, and your request
for Administrative Remedy is denied.

If you are dissatisfied with this response, you may appeal to the
Regional Director, United States Federal Bureau of Prisons, Northeast
Regional Office, United States Customs House - Seventh Floor, Second
and Chestnut Streets, Philadelphia, PA 19106, within twenty (20)
calendar days from the date of this response.

1/23/19
_____
Date

_____
David J. Ebbert, Warden

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 13, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTHEAST REGIONAL OFFICE

TO  : MICHAEL GORDON, 64459-061
      LEWISBURG USP    UNT: X-BLOCK    QTR: X04-303L
      2400 ROBERT F. MILLER DRIVE
      LEWISBURG,  PA 17837


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 966224-R2      REGIONAL APPEAL
DATE RECEIVED  : FEBRUARY 8, 2019
SUBJECT 1      : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2      : OTHER DHO RELATED MATTERS
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REJECT REASON 3: SEE REMARKS.

REMARKS        : STAFF COMPLAINTS SHOULD BE FILED AT THE INSTITUTION.

1-7-2019

TO: Mr. Hurley / C.O.

From: Michael Lee Gordon                    X-Block
      #64459-061                            cell# 301

                    ___ Request ___

    I am a transgender! My cellie is not a transgender nor is he okay with being in a cell with a transgender!

    I request to be moved please? I feel as though my life, safety and personal well being is in danger of a threat of an imminent threat of immediate harm, injury and/or death!

    If I am not moved I will act act in self defense to protect myself even if that means harming, injuring and/or killing another to protect myself.

    ✗ P.S. I am writing you, Mr. Hicks, Case manager, Associate Warden B. Lommer, Warden Mr. Ebbert, the Psychology Dept; I am going to the Law Library and filing a complaint on the Prea hotline and I will file an Administrative Remedy (ie BP-8 and a sensitive BP-9)

          Sincerely, Michael Lee Gordon

1-7-2019

To: L.t. Leo

From: Michael Lee Gordon                    X-Block
        #64459-061                          cell# 301

_____ Request _____

I am transgender! My cellie is not a transgender nor is he okay with being in a cell with a transgender.

I request to be moved please? I feel as though my life, safety and personal well being is in danger of a threat of an imminent threat of immediate harm, injury, and/or death!

If I am not moved I will act out in self defense to protect myself even if that means harming, injuring and/or killing another to protect myself.

☆ P.S. I am writing you; the Associate Warden, B. Lammer; The Warden, Mr. Ebbert; the Psychology Dept.; Mr. Hicks, X-Block case manager; I am going to the Law Library and filing a complaint on the Prea hotline and I will file an Administrative Remedy (i.e. BP-8 and a Sensitive BP-9).

                    Sincerely, Michael Lee Gordon

1-7-2019

TO: Psychology Dept

From: Michael Lee Gordon          X-Block
      #64459-061                  cell# 301

_____ Request _____

        I am transgender! My cellie is not
a transgender nor is he okay with being
in a  cell with a transgender!
        I request to be moved to another
cell please? I feel as though my life,
safety and personal well being is in danger
of a  threat of an imminent threat of
immediate harm, injury and/or death!
        If I am not moved I will act
out in self defense to protect myself
even if that means harming, injuring and/or
killing another to protect myself

    * P.S. I am writing you; the Associate Warden,
B. Lammers the warden, Mr. Ebbert; Mr. Hicks,
X-Block case manager; I am going to the
law library and filing a complaint on the
Prea hotline and I will file an Administrative
Remedy (ie. BP-8 and a sensitive BP-9).

                Sincerely, Michael Lee Gordon

1-7-2019

TO: Mr. Hicks / X-Block Case Manager

From: Michael Lee Gordon          X-Block
       #64459-061                 cell# 301

__Request__

    I am transgender! My cellie is _not_ a transgender nor is he okay with being in a cell with a transgender! I request to be moved please? I feel as though my life, safety and personnel well being is in danger of a threat of an imminent threat of immediate harm, injury, and/or death!

    If I am _not_ moved I will act out in self defense to protect myself even if that means harming, injuring and/or killing another to protect myself.

    * P.S. I am writing you; the Associate Warden, B. Cammer; the Warden, Mr. Ebbert; the Psychology Dept.; I am going to the Law Library and filing a complaint on the Prea hotline and I will file an Administrative Remedie (i.e. BP-8 and a sensitive BP-9)

            Sincerely, Michael Lee Gordon

2-22-2019

TO! Mr Hurley / X-Block No. 7

From: Michael Lee Gordon                    X-Block
       #64459-061                            cell# 303

Request

Hurley, what's up? I sent you a cop-out yesterday requesting to have inmate "William Mexican #13369-073" moved into my cell and Mexican sent in a request also and he was moved into a cell by hisself? Why?

Am I being denied to have a cellie? If so, I would like to know why? I was told by L.t. Leo to find a cellie and I did and it was denied?

If that is the case, that's cool. But, I will expect to stay single cell until I am SMU complete. I have someone who I am cool with and I am compatible with and you don't want to do the move? That doesn't make any sense man.

Just the other day, someone tried to put me under with a black person who was under investigation for a PREA violation???

Can you come speak to me please?

                    Thank You, Michael Gordon #64459-061

\* Response:

     Spoke to Mr. Hurley personally and he told me @ 10:30 A.M. I am not getting a cellie, stating: "You are transgender, you want to be a transgender, you will be single cell until you leave! You made the choice to be a transgender, I didn't."

                   End Quote.

Letter from Inmate (FNU) chuck

2 2 19

Mike, A I v been looking & listening right? well, I wasn't gonna say nothen because I
Thought maby it was a mistake or mistake in identity or somethin but check it out. I was presen
real bad tryna rane one time and had a cell to go to and they knew you'd take my
Cellie. well thay told me when I was going outside, that my name was Kool but
thay couldent put jervis with you because your an "Predator static", exact words homie.
I blew it off as these fools just on some bullshit but I see this now with you
Tryna get nexie in there. I figured I'd tell you that. Im thinks though, your
like me, you aint pressed for shit, expeshally a bitch, aint no way you was
ever on some creep shit. so what I came up with is maby a possive ex lover
done put a bone on your jacket to keep you away from other bitches or somethin.
somethin you need to checkout if your sweaten it ever. I didnt tell noone
but jervis this at that time it happend so dont trip I aint on no rumer shit.
I'd just want to Know this if I was you.      Respects
CO. Hurley told me.

LEW 1330.13D

ADMINISTRATIVE REMEDY PROGRAM

ATTACHMENT A

## INFORMAL RESOLUTION ATTEMPT # _19-014_

In accordance with Program Statement 1330.13, Administrative Remedy Program, this form will serve as documentation by the respective staff member and the unit manager to indicate an informal attempt to resolve the complaint of the following inmate:

NAME: _Michael Lee Gordon_ ___ REG NO: _#64459-061_

FORM TO INMATE: _2/26/19_ _____ STAFF: _K. Gemberling X-BLOCK_
(date) (name) (unit)

_A BP-299 (13) WILL NOT ORDINARILY BE ACCEPTED WITHOUT THIS COMPLETED FORM ATTACHED_

1. NATURE OF COMPLAINT (to be completed by inmate):

Officials are systematicly personally, purpose fully, intentionally, recklessly, tormenting, harrassing, torturing me in a discriminate and/or retaliatory manner; specifically because I am a transgender and because I filed Administrative Remedies against their co-worker.

*1) officer Hurley wrote a false misbehavior report against me, to harrass + torment; to discriminate and retaliate.

*2) On one day officer Hurley, Lt Leo, psychology staff and the S.I.S department attempted to place me in a cell with another inmate who is a known sexual predator and was under investigation after being accused of committing a sexual assault with the intentions of having me assaulted; to discriminate and retaliate.

*3) On the same day Lt. Leo threatened me to "find a cellie or you will be written an incident report."

*4) Subsequently, I was refused a cellmate whom we both requested to be placed together; to discriminate and retaliate.

*5) officer Hurley, and other unknown to me are telling other inmates that I am on "Predator Status", or that I am a "sexual Predator", and/or other similar comments to personally, purpose fully, intentionally, recklessly, torment, harrass, torture me in a discriminate and retaliatory manner to have me harmed, injured and/or killed.

Staff here at USP Lewisburg are systematicly doing things that are placing my life, safety and personal well-being in danger.

I will "be perfecting a civil action naming all officials as defendants" once this Administrative Remedy is completed. Thank You,

LEW  1330.13D
ADMINISTRATIVE REMEDY PROGRAM
ATTACHMENT A CONTINUED

**FOR STAFF USE ONLY:** (to be completed within 5 working days)

1. Date Received from inmate:   02-27-2019

2. Staff Member Assigned to Respond to U/M:   J. Konkle

3. Efforts Made to Resolve the Problem:

4. Applicable Program Statement Used in this Informal Resolution Attempt:

5. Inmate's Response to Informal Remedy Attempt:

Prepared by:  K. Gemberling/ Correctional Counselor

Received by (U/M): C. Berkoski/ Unit Manager   *C. Berkoski*

Original Returned to Inmate (Date): 3/5/19

cc:  Central File

Inmate Name:     Gordon, Michael
Inmate Reg. No.  64459-061
Quarters:        X-Block


In your Informal Resolution Attempt, received February 28, 2019, you claim staff retaliated against you because you are transgender. You further claim staff is harassing you and being unprofessional towards you.

Staff misconduct is viewed very seriously. Staff conduct is governed by Program Statement 3420.11, Standards of Employee Conduct, dated December 6, 2013.  An inquiry has been conducted regarding your claims, to include interviews with applicable staff and a review of documentation.  No significant information was discovered to support your claims or show staff were negligent in their duties. Furthermore, staff denied harassing you in any way.

Based on this evidence, your request for Informal Resolution is denied.


J. Konkle, Captain                              2-28-19
                                                  Date

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Gordon   Michael   L   #64459-061   X-Block   USP Lewisburg
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A– INMATE REQUEST** Officials are systematicly, personally, purposefully, intentionally, recklessly, tormenting, harrassing, torturing me in a discriminate and/or retaliatory manner; specificly because I am a transgender and/or because I filed an Administrative Remedy against their co-worker.

#1) Officer Herles wrote a false misbehavior report,
#2) Lt. Leo threatened me to "find a cellie or I would be written an "incident report."
#3) Officer Herles and others unknown to me are telling other inmates that I am on "Predator status" a "sexual predator" and/or other similar comments to personally, purposefully, intentionally, recklessly, torment, harrass, torture in a discriminate and retaliatory manner to have me harmed, injured and/or killed.
#Relief All staff reprimanded. I will be filing a civil action in a US District court.

3-5-2019
DATE

SIGNATURE OF REQUESTER

**Part B– RESPONSE**

**RECEIVED**

MAR 11 2019

ADMIN REMEDY CLERK
USP LEWISBURG

_____        _____
DATE                                WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**        CASE NUMBER: 970600-F1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____        _____
DATE                                RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN        PRINTED ON RECYCLED PAPER        BP-229(13)
APRIL 1982

Admin. Remedy No.: 970600-F1
Part B- Response

## ADMINISTRATIVE REMEDY RESPONSE

This is in response to your Request for Administrative Remedy received March 11, 2019, wherein you claim staff retaliated against you because you are transgender. You further claim staff is harassing you and being unprofessional towards you.

Staff misconduct is viewed very seriously. Staff conduct is governed by Program Statement 3420.11, Standards of Employee Conduct, dated December 6, 2013.  An inquiry has been conducted regarding your claims, to include interviews with applicable staff and a review of documentation.  No significant information was discovered to support your claims or show staff were negligent in their duties. Furthermore, staff denied harassing you in any way.

In view of the above, there is no basis for relief, and your request for Administrative Remedy is denied.

If you are dissatisfied with this response, you may appeal to the Regional Director, United States Federal Bureau of Prisons, Northeast Regional Office, United States Customs House - Seventh Floor, Second and Chestnut Streets, Philadelphia, PA 19106, within twenty (20) calendar days from the date of this response.

3/15/19
Date

David J. Ebbert, Warden

BP-A0288
JAN 17

## INCIDENT REPORT

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

### Part I - Incident Report

| 1. Institution: USP Lewisburg | | Incident Report Number: | |
|---|---|---|---|
| 2. Inmate's Name: Gordon, Michael | 3. Register Number: 64459-061 | 4. Date of Incident: 3-25-2019 | 5. Time: 8:17 am |
| 6. Place of Incident: X-block 3rd floor cell 305 | 7. Assignment: none | | 8. Unit: Berkowski |

| 9. Incident: Gambling, possession of gambling paraphernalia, possession of anything not authorized | 10. Prohibited Act Code(s) 324,326 and 305 |
|---|---|

11. Description of Incident: (Date: 3-25-2019   Time: 8:17 a.m. Staff became aware of incident):

   On 03-25-2019 at approximately 8:17am I was conducting a search of cell X-305. X-305 is assigned to inmate Gordon, Michael (64459-061). During the course of the search I located numerous gambling slips and 91 books of US postage stamps.

| 12. Typed Name/Signature of Reporting Employee: A. Barbella | 13. Date And Time: 03-25-2019 10:15 am |
|---|---|

| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature): | 15 .Date Incident Report Delivered: 3-25-19 | 16. Time Incident Report Delivered: 1135 pm |
|---|---|---|

### Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident:

18. A. It is the finding of the committee that you:

_____ Committed the Prohibited Act as charged.
_____ Did not Commit a Prohibited Act.
_____ Committed Prohibited Act Code(s). _____  _____

B. _____ The Committee is referring the Charge(s) to the DHO for further Hearing.

C. _____ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision is Based on Specific Evidence as Follows:

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act):

21. Date and Time of Action:_____(The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings).

_____          _____          _____
Chairman (Typed Name/Signature)          Member (Typed Name)          Member (Typed Name)

   INSTRUCTIONS: All items outside of heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be voided by staff.

   Distribute: Original-Central File Record; COPY-1-DHO; COPY-2-Inmate after UDC Action; COPY 3-Inmate within 24 hours of Part I Preparation

| WD | Prescribed by P5270 | Replaces BP-A0288 of AUG 11 |
|---|---|---|
| | **Part III - Investigation** | 22. Date And Time Investigation Began |

U.S. Department of Justice

Federal Bureau of Prisons

**Confiscation and Disposition of Contraband**

_#2 (Barbella)_      _USP Lewisburg_

Signature/Printed Name of Staff Member Confiscating Property      (Institution)

| 1. Name: _Gordon, Michael_ | 2. Register No.: _64459-061_ | 3. Unit: _Barkaushi_ | 4. Date: _3/25/19_ |
|---|---|---|---|

5. The contraband listed below was found in possession of, or in the living quarters of the above named inmate on _____

(Make a numerical list of contraband)

_1. 90 books U.S. Postage Stamps_

6. (To be completed by inmate) I have received a list of those items confiscated as contraband. I claim ownership of the following items (identify by number from section 5 above): Nos. _1_ . I am aware that a claim of ownership will not be accepted for any item of government property. With respect to my claimed personal property, I am aware that I have 7 days from receipt of this inventory to provide staff with evidence of my ownership of the claimed items.

I, _____ , received a copy of this inventory on _____
        (inmate's signature)                                         (date)

7. Of the contraband listed in section 5 above, the inmate has established ownership for the following (identify by number from section 5 above): Nos. _1._

Contraband, other than hard contraband, may be mailed at the inmate's expense to a destination of the inmate's choice. The institution may pay for the mailing when the inmate has insufficient funds and no likelihood of receiving new funds. Where the inmate is financially able to pay postage, but refuses, or fails to provide a mailing address for return of the property, the confiscated property will be disposed of through approved means, including destruction of property.

I have read or had read to me the above information. I request the following action be taken in regards to my contraband property.

a. _X_ I request the property be mailed to _Linda Leach at 5014 Sutherland Drive_
                                   I agree to pay mailing costs. _Columbus, OHIO 43207_

Inmate's Signature: _Michael Lee Grub_     Date: _#64459-061_ _3-25-2019 @ 10:41 AM_

b. ___ I request the institution to pay mailing costs. I have insufficient funds in my institution account and do not expect to receive new funds. (The approval of the Warden or designee is required for the institution to pay postage.)

Inmate's Signature: _____     Date: _____

c. ___ Other (specify, e.g., donate to institution)

Inmate's Signature: _____     Date: _____

8. The following contraband (identify by number from section 5 above) has been determined to be hard contraband or to be contraband for which no ownership has been established. The contraband has been disposed of by (indicate disposition/reasons): Nos. _____

_____     Date
Signature/Printed Name of Staff Member Determining Method of Disposal

_____     Date
Signature/Printed Name of Staff Member Disposing of Property

_____     Date
When Property is Destroyed, Signature/Printed Name of Staff Witness

cc: Central File
    Chief Correctional Supervisor
    Inmate Systems Manager
    Inmate

BP-402(58)
January 1983
USP LVN

<u>RE:</u> Notice of claim of ownership of Personal property and Personal notice letter.

4-2-2019

Dear Regional Director,

I am writing to place you on "<u>notice of my claim of ownership</u>" is made with respects to the ninety (90) books of United States Postage Stamps confiscated from me on 3-25-2019 while at U.S.P. Lewisburg, PA; (by officer A. Barbella); pursuant to 18 U.S.C. 983,

*1.) The property is ninety (90) books of United States Postage Stamps.

*2.) I am the said owner and hereby claiming ownership of these ninety (90) books of United States Postage Stamps, and do declare under oath and the penalties of perjury.

———— Certificate of Service ————

I hereby state that the foregoing is true and correct to the best of my ability that a copy of the same was sent 2nd day of April, 2019; and I further make all the above claims under oath and the penalty of perjury to the same, as being true and correct to the best of my ability,

Respectfully, Michael Lee Gordon
#64459-061
U.S.P. Lewisburg
P.O. Box 1000
Lewisburg, PA
17837

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Federal Bureau of Prisons Northeast Regional Office US Customs House - 7th floor 2nd and Chestnut Streets Philadelphia, PA 19106 | Michael Lee Gordon # 64454-00 USP Lewisburg P.O. Box 1000 Lewisburg, PA 17837 |

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☑ CIVILIAN | 4. DATE OF BIRTH 11-24-1974 | 5. MARITAL STATUS Single | 6. DATE AND DAY OF ACCIDENT Monday, 3-25-2019 | 7. TIME (A.M. OR P.M.) 8:17 A.M. |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

On Monday, 3-25-2019 @ 8:17 A.m, official here at USP Lewisburg confiscated and forfeited ninety (90) books of United States Postage stamps and denied, refused and rejected to provide me "due process of law" (in any way shape or form) in confiscating and forfeiting my property, furthermore, officials here at USP Lewisburg confiscated and forfeited my property without any legal adjudication, without any legal process, without any legal due process and did so contrary to the code of federal Regulation.

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Ninety (90) books of United States Postage Stamps.

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

confiscation and forfeiture of personal property.

**11. WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| A. Barbella, officer | USP Lewisburg |

**12. (See instructions on reverse).   AMOUNT OF CLAIM (in dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| $990.00 | | | $990.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM NA | 14. DATE OF SIGNATURE 3-31-2019 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

95-109

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☐ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes   ☐ No   | 17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☐ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a seperate claim form.**

**Complete all Items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)*  In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)*  In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)*  In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)*  Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A.  *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:*  The information requested is to be used in evaluating claims.
C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is <u>solely</u> for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) BACK

BP-A0140
JUNE 10

**INJURY REPORT - INMATE - PART 1** CDFRM

U.S. DEPARTMENT OF JUSTICE          **FEDERAL BUREAU OF PRISONS**

SEE DISTRIBUTION AND SPECIAL INSTRUCTION AT THE TOP OF THE NEXT PAGE FOR INMATE COPY

\* Pg 1 of 2 \*

| 1. Institution | 2. Name of Injured | 3. Register Number |
|---|---|---|
| FCC TUCSON | Michael Lee Gordon | #64459-061 |

| 4. Injured's Duty Assignment | 5. Injured's Duty Hours | 6. Date and Time of Injury |
|---|---|---|
| Food Services Dish Tank area | 6:00 A.M. to 12:00 noon | 11-9-2017 @ 11:00 AM |

7. Where Did Injury Happen (be specific as to location)
Dish Tank room

8. Date and Time Injury Was Reported
11-10-2017 @ 9:30 A.M.

9. In Your Opinion, Was This Injury: (a) [✓] Work Related    [ ] Non Work Related

(b) [✓] Institution    [ ] Industry    [ ] Recreation    [ ] Program or Activity

[ ] Other (explain)

| 10. To Whom Was Injury First Reported | 11. Part of Body Involved (left knee, etc.) | 12. Kind of Injury (burn, cut, etc.) |
|---|---|---|
| Mr. Brown / food Service | My finger was cut, my left leg and left arm was bruised and my lower back was injured. | I was cut, bruised and had my back bruised. |

13. Injured's alleged Witnesses to Injury (staff and inmates)
I want to have all inmates working on 11-9-2017 @ 11:00 AM to be interviewed. I want the cameras reviewed and I want to have all inmates

14. Injured's Brief Statement As To How Injury Happened. Include Injured's Recommendation for Prevention. (Continue on additional blank sheets, if necessary.)
On 11-9-2017 @ 11:00 AM I was assigned to work in the Dish Tank area and it was my responsibility to feed plastic trays into the Dish machine once I retrieved them from the counter. It was my responsibility to retrieve a 2 and 3 foot stack of trays to feed into the Dish machine. In the middle of the aisle was there is a 4-foot by 1-foot water drain that is not fasten down hinged on 11-2017 @ 11:00 AM. someone had removed this water drain creating a hole in the floor and is loose and can be removed. The injured's standard and bases (Statement continued over) (see Page 2of2 Over) →

15. Supervisor's Statement - Must Include: a. Job Training Record, b. Safety Equipment Provided, c. Whether Safety Equipment In Use, d. Whether Proper Guarding Used, e. Corrective Action Taken. (Continue on additional blank sheets, if necessary)

This inmate Gordon #64459-061 never reported this injury on this date or I would have sent him to medical immediately.
C. Brown 5-21-2018

• Supervisor's Signature, Title and Date:

| 16. Medical Description of Injury | 17. This Injury Required: |
|---|---|
| 1) Cut left index finger. | a. [ ] No Medical Attention |
| 2) bruised left leg. | b. [ ] Minor First Aid |
| 3) bruised left arm. | c. [ ] Hospitalization - from _____ to _____ |
| 4) Herniated lower back. | d. [✓] Work Time Lost - from accident to now |
| | e. [ ] Other (explain) |
| | Total Lost Time Days: 90 days lost time |

Record Copy - Inmate file; Copy - Safety Office; Copy - Inmate

Prescribed by P1600      Replaces BP-140.016, Part 2, of SEP 05

PDF

— Statement Pg 2of2 —

Cont'd'

cover to clear the drain out and did not put the water drain cover back in place. (ie which I did not notice). While going from the front of the Dish machine to retrieve a stack of plastic trays to feed into the Dish machine and after having gotten a stack of trays - while returning to the front of the Dish machine to feed the trays through, I stepped into the "hole" in the floor caused by the water drain cover being removed. I fell to the floor cutting my finger, bruising my left arm and left leg and herniating my back to the point of where I lose control of my bladder and urinate on myself.

Signed. *Michael Lee Gordon*
Michael Lee Gordon
#64459-061
USP Tucson
P.O. Box 24550
Tucson, Arizona
85734

BP-A0140       INJURY - LOST - TIME FOLLOW-UP - PART 2 CDFRM
JUNE 10
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

NAME _Michael Lee Gordon_          REG. NO. _64459-061_
RE: INJURY OF _11-9-2017 @ 11:00 A.m._
                    Date

1.  (Witnesses Statement) Use Additional Sheets of Plain Paper if Necessary.




RECOMMENDATION FOR PREVENTION _____

_____
    Witness Signature          Reg. No. or Title          Date

2.  (Department Head's Statement)

        No Comment.


FOLLOW-UP OR CORRECTION ACTION TAKEN _____
_Actions for PA Mgr_              _AFSIA_              _5/22/18_
        Department Head)            Title                Date

3.  (Safety Manager's Comments)
    _Inmate Gordon's claim has been accepted._

    _____                    _5/22/18_
        Safety Manager                          Date

4.  (Safety Committee Review-Comments)
    _Accepted condition._

    _____                    _5/22/18_
    Associate Warden's Signature                Date

NAME _Michael Lee Gordon_          REG. NO. _"64459-061_
RE: INJURY OF _11-9-2017 @ 11:00 A.M._
                    Date

5.  ☒ The Institution Safety Committee has reviewed the report of your injury and is their
       opinion that your injury was work related.

    ☐ The Institution Safety Committee has reviewed the report of your injury and it is their
       opinion that your injury was not work related.

The final determination of the work relatedness of this injury is subject to review by the Inmate
Accident Compensation Committee upon the filing of a claim for Inmate Accident Compensation due to a
physical impairment resulting from the injury.

    _____                  X _5/22/18_
        Safety Manager                          Date

Record Copy - Inmate file; Copy - Safety Office; Copy - Inmate

    PDF                    Prescribed by P1600        Replaces BP-140.016, Part 2, of SEP 05

LEW  1330.13D
ADMINISTRATIVE REMEDY PROGRAM
ATTACHMENT A

## INFORMAL RESOLUTION ATTEMPT # __18-225__

In accordance with Program Statement 1330.13, <u>Administrative Remedy Program</u>, this form will serve as documentation by the respective staff member and the unit manager to indicate an informal attempt to resolve the complaint of the following inmate:

NAME: _Michael  Lee  Gordon_     REG NO: _#64459-061_

FORM TO INMATE: _1-15-2019_     STAFF: _K. Gemberling X-BLOCK_
        (date)             (name)     (unit)

*A BP-299 (13) WILL NOT ORDINARILY BE ACCEPTED WITHOUT THIS COMPLETED FORM ATTACHED*

1.  NATURE OF COMPLAINT (to be completed by inmate): (Turned in on 1-15-2019)

I did sustain a work-related injury while on-the-job in the food service department while confined at USP Tucson, Arizona on 11-9-2017.

I recently was directed by the Western Regional office to complete and file for relief through the Administrative Remedy process pursuant to 28 C.F.R. part 542. The injury sustained on 11-9-2017 was determined to be a work-related injury by the safety Manager at USP Tucson, Arizona.

I was recently approved payment of lost-time wages pursuant to section 301.203 and was provided lost time wages for five (5) months following this on-the-job injury.

Per section 301.204 inmate accident compensation and the Regulations Governing inmate accident compensation procedures I should be provided a continuation of lost time wages; because I was previously "approved" for lost time wages in connection with the injury sustained on 11-9-2017.

Because this injury sustained on 11-9-2017 was a work-related on-the-job injury that has incapacitated me from working I am now seeking and I qualify for a continuation of lost-time wages each month because of the injury that I sustained on 11-9-20

* Relief: I request to be provided $50.00 per month for the lost-time wages to be provided each month due to the injury sustained on 11-9-2017 please. Thank You,

LEW  1330.13D
ADMINISTRATIVE REMEDY PROGRAM
ATTACHMENT A CONTINUED

**FOR STAFF USE ONLY:** (to be completed within 5 working days)

1. Date Received from inmate:   <u>01-15-2019</u>

2. Staff Member Assigned to Respond to U/M:  <u>R. Hicks</u>

3. Efforts Made to Resolve the Problem:

4. Applicable Program Statement Used in this Informal Resolution Attempt:

5. Inmate's Response to Informal Remedy Attempt:

Prepared by:  <u>K. Gemberling/ Correctional Counselor</u>

Received by (U/M):  <u>C. Berkoski/ Unit Manager</u>

Original Returned to Inmate (Date):

cc: Central File



U.S. GOVERNMENT

# MEMORANDUM

FEDERAL BUREAU OF PRISONS

UNITED STATES PENITENTIARY

LEWISBURG, PA.

DATE:        01/25/2019

FROM:        R. Gemberling, Correctional Counselor

SUBJECT:    Inmate Gordon #64459-061

I/M Gordon #64459-061 handed his Counselor a BP-8 #18-225 for processing on 01/15/19. After several attempts to get a response from the appropriate department, this Informal Resolution Attempt has not been answered.  Therefore, the Inmate may proceed to the next level, BP-9, since his attempt at the Informal Resolution did not resolve his issue.

REJECTION NOTICE - ADMINISTRATIVE REMEDY



DATE: JANUARY 30, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      LEWISBURG USP                              X303

TO  : MICHAEL GORDON, 64459-061
      LEWISBURG USP    UNT: X-BLOCK    QTR:
      2400 ROBERT F. MILLER DRIVE
      LEWISBURG,  PA 17837


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID     : 966087-F1      ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED : JANUARY 30, 2019
SUBJECT 1     : INSTITUTION JOB - ASSIGNMENT, JOB COMPLAINT
SUBJECT 2     :
INCIDENT RPT NO:


REJECT REASON 1: YOUR REQUEST IS UNTIMELY.  INSTITUTION AND CCC REQUESTS
                 (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED
                 ABOUT.


Dear Administrative Remedy Coordinator, This request was
timely filed. I was approved Lost Time Wages and
was suppose to receive these Lost Time Wages
starting on January 2019 at the institution
Pay period and I did not receive payment.
Furthermore, this is an "ongoing issue" because
I am to receive a continuation of Lost-
Time Wages each month. My continuation of
Lost-Time wages has yet to even start,
so the issue that I am complaining about
is a current and up-to-date issue.
* Note: I was directed by the western
Regional office to file to receive these
continuation of Lost-Time Wages. Thank You.

U.S. DEPARTMENT OF JUSTICE                                **REQUEST FOR ADMINISTRATIVE REMEDY**
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

**From:** <u>Gordon      Michael   Leo</u>     <u>64459-061</u>     <u>X-Block</u>     <u>USP Lewisburg</u>
      **LAST NAME, FIRST, MIDDLE INITIAL**     **REG. NO.**    **UNIT**    **INSTITUTION**

**Part A– INMATE REQUEST**

I did sustain a work-related injury while on-the-job in the food service department while confined at USP Tucson on 11-9-2017. This injury was determined to be a work related injury. I was approved payment of lost-time wages for five (5) months following this injury. Per section 301.204 inmate accident compensation and Regulations Governing inmate accident compensation procedures I should be provided a continuation of lost time wages.

✳ Relief: I request to be provided $50.00 per month for the lost-time wages to be provided each month due to the injury sustained on 11-9-2017. Please. Thank You

<u>1-28-2019</u>                                          
    **DATE**                                 **SIGNATURE OF REQUESTER**

**Part B– RESPONSE**

**RECEIVED**

**JAN 30 2019**

**ADMIN REMEDY CLERK
USP LEWISBURG**

_____       _____
    **DATE**                           **WARDEN OR REGIONAL DIRECTOR**

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**          **CASE NUMBER:** 966087P1

                                            **CASE NUMBER:** _____

**Part C– RECEIPT**

Return to: _____
          **LAST NAME, FIRST, MIDDLE INITIAL**       **REG. NO.**       **UNIT**      **INSTITUTION**

SUBJECT: _____

_____       _____
    **DATE**                               **RECIPIENT'S SIGNATURE (STAFF MEMBER)**

USP LVN          **PRINTED ON RECYCLED PAPER**                         BP–229(13)
                                                           APRIL 1982

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 22, 2019


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTHEAST REGIONAL OFFICE

TO  : MICHAEL GORDON, 64459-061
      LEWISBURG USP    UNT: X-BLOCK    QTR: X04-303L
      2400 ROBERT F. MILLER DRIVE
      LEWISBURG,  PA 17837


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 966087-R1      REGIONAL APPEAL
DATE RECEIVED  : FEBRUARY 19, 2019
SUBJECT 1      : INSTITUTION JOB - ASSIGNMENT, JOB COMPLAINT
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: SEE REMARKS.

REMARKS        : CONCUR WITH RATIONALE OF INSTITUTION FOR REJECTION.
                 YOU ARE COMPLAINING ABOUT AN ISSUE ON 11-9-17. IF
                 THIS IS MORE RECENT REFILE A CORRECTED BP8.

**U.S. Department of Justice**

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Gordon Michael L #64459-061 X-Block USP Lewisburg
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**

I am appealing the "rejection" of my BP-9 for being untimely filed, for the following reasons: ✱1.) I was approved payment of lost-time wages and I should receive lost-time wages and a continuation of lost-time wages each month thereafter; so this is an "ongoing issue" as I am to receive a continuation of lost-time wages each month. ✱Relief: That the Administrative Remedy Coordinator at USP Lewisburg to be directed to respond to my BP-9 please.

2-12-2019
DATE                                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**


DATE                                    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE        CASE NUMBER: 966087R1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____        _____
DATE                    SIGNATURE, RECIPIENT OF REGIONAL APPEAL

FPI-PEPR        PRINTED ON RECYCLED PAPER        BP-230(13)
JUNE 2002

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: MARCH 18, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MICHAEL GORDON, 64459-061
      LEWISBURG USP      UNT: X-BLOCK      QTR: X04-304L
      2400 ROBERT F. MILLER DRIVE
      LEWISBURG,  PA 17837

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 966087-A1        CENTRAL OFFICE APPEAL
DATE RECEIVED  : MARCH 4, 2019
SUBJECT 1      : INSTITUTION JOB - ASSIGNMENT, JOB COMPLAINT
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: CONCUR WITH RATIONALE OF REGIONAL OFFICE AND/OR INSTITUTION
                 FOR REJECTION. FOLLOW DIRECTIONS PROVIDED ON PRIOR REJECTION
                 NOTICES.

RECEIVED
Warden's Office

MAR 25 2019

USP Lewisburg

U.S. ___ of Justice

**Central Office Administrative Remedy Appeal**

Federal ___ of Prisons

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Gordon   Michael   Lee     #64459-061    X-Block    USP Lewisburg
  LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT            INSTITUTION

**Part A—REASON FOR APPEAL**

I am appealing the rejection of my BP-9 and BP-10 for being untimely filed for the following reasons:

*1.) I was approved payment of lost-time wages and I should receive a continuation of lost-time wages each month thereafter, so this is an ongoing issue

**Relief: To receive a continuation of lost-time wages of $50.00 per month.

2-25-2019
DATE

SIGNATURE OF REQUESTER

**Part B—RESPONSE**

DT

RECEIVED

MAR 04 2019

Administrative Remedy Section
Federal Bureau of Prisons

DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 96608FA1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

# Legal Materials Request Form

### USP Lewisburg, PA
#### Updated October 2013

*(handwritten in left margin, rotated): X-Block / cell # 304*
*(handwritten in left margin): Cell #:*
*(handwritten in left margin): Register #: 64459-061*
*(handwritten in left margin): NAME: Michael Lee Gordon*

**INSTRUCTIONS:**

1. Due to limited resources (such as time and manpower) and the amount of requests that the Library receives each week, please limit yourself to **ONE (1) request per week with no more than THREE (3) items per request.** This includes: Legal Copies, Addresses (if available) and/or any other legitimate LEGAL requests. When you have received your requested material(s), you may submit another request. Do not send multiple request forms, only one request will be honored per week in the order that it is received.

2. Materials which are readily available on your unit's Electronic Law Library (ELL) computer will not be provided by the Main Law Library, you must use your unit's Electronic Law Library to access, view and/or print those materials. To attend your unit's Law Library; you will need to submit a Request to a Staff Member (cop-out) to your unit's custody staff. In the event that you are on indigent status (inmates lacking funds) and need items printed off of the ELL computer, you may request an **Indigent Inmate Request for Printed Legal Pages form** from the Main Law Library. Please read and carefully follow the directions before completing the form in its entirety. Properly completed forms then must be sent to the Supervisor of Education for verification of indigent status.

3. When making your request, please state as specifically as possible, the item(s) for which you are requesting. (For Example: Four (4) copies of all legal materials, front and back.) Your request must be printed legibly and include your last name and full inmate number. Failure to comply with these procedures may result in your request not being filled. Additionally, all requests to the Main Law Library may be made using any of the following methods: A Legal Materials Request Form (this form), a standard Inmate Request Form (cop-out) or by writing your request on a blank sheet of paper, so long as it abides by the rules listed above. **Requests that are written on the envelope will not be honored and will be returned uncompleted.**

4. **FOR LEGAL COPIES:** You must state as clearly as possible the amount of legal copies that you require (i.e. 3 copies of each page, front and back). All fasteners (to include staples, tape, stickers, paper clips, etc.) must be removed from your legal paperwork prior to submission. Failure to comply will result in your legal items being returned to you uncompleted. Copies will only be reproduced on one side of standard 8½" x 11" copy paper and the Library will not honor any requests for enlargements and/or reductions of your legal materials. In order to help maintain acceptable levels of legal materials, there is a LIMIT OF 5 COPIES per page unless you can provide a written court mandated need for more. Also, the Library WILL NOT make copies of BLANK LEGAL FORMS, these items are not considered to be legal in nature until something is written on the form. See Program Statement 1315.07 for a detailed explanation of all inmate legal activities.

5. **PRIOR TO RECEIVING YOUR LEGAL COPIES:** All inmates will be required to legibly sign a pre-completed form BP-199.045 (Request for Withdrawal of Inmate Personal Funds) in the amount for which it cost to complete the copies. This form will be provided to the inmate by the Law Library Staff (or its representative) when the completed copies are delivered. **All copies cost $0.15 per page.** When signing the form BP-199, **please provide your signature only** on the designated line. No political statements, nicknames or other written statements will be accepted. If you fail to abide by this rule, you <u>WILL NOT</u> receive your requested copies and an incident report may be written. Additionally, any inmate who refuses to sign the form BP-199 <u>WILL NOT</u> receive his requested copies and an incident report may be written for your refusal to pay.

6. For further information on all Law Library services, please consult your SMU Inmate Handbook or see your unit's law library for a complete list of legal request rules and regulations (on the ELL computer, under the **Bulletin Board** section).

### ALL SUBMITTED REQUESTS ARE BASED UPON THE COMPETETIVE NEEDS OF ALL INMATES AND ARE SUBJECT TO THE NEEDS OF THE INSTITUTION.

| Request # | Request (copy information, addresses, other) | Result |
|---|---|---|
| 1. | One (1) copy of these 2-pages. | — |
| 2. | | |
| 3. | | |

*(handwritten/stamped): Personal*
**NOT LEGAL**
**NO COPIES**
**COMPLETED**

Date Completed by Staff: 3/11/19 CM

*(handwritten): Must prove a legal need for copies per P.S. 1315.07. If you are filing something further, please provide proof.*

# Legal Materials Request Form

## USP Lewisburg, PA

### Updated October 2013

**INSTRUCTIONS:**

1. Due to limited resources (such as time and manpower) and the amount of requests that the Library receives each week, please limit yourself to **ONE (1) request per week with no more than THREE (3) items per request.** This includes: Legal Copies, Addresses (if available) and/or any other legitimate LEGAL requests. When you have received your requested material(s), you may submit another request. Do not send multiple request forms, only one request will be honored per week in the order that it is received.

2. Materials which are readily available on your unit's Electronic Law Library (ELL) computer will not be provided by the Main Law Library, you must use your unit's Electronic Law Library to access, view and/or print those materials. To attend your unit's Law Library; you will need to submit a Request to a Staff Member (cop-out) to your unit's custody staff. In the event that you are on indigent status (inmates lacking funds) and need items printed off of the ELL computer, you may request an **Indigent Inmate Request for Printed Legal Pages form** from the Main Law Library. Please read and carefully follow the directions before completing the form in its entirety. Properly completed forms then must be sent to the Supervisor of Education for verification of indigent status.

3. When making your request, please state as specifically as possible, the item(s) for which you are requesting. (For Example: Four (4) copies of all legal materials, front and back.) Your request must be printed legibly and include your last name and full inmate number. Failure to comply with these procedures may result in your request not being filled. Additionally, all requests to the Main Law Library may be made using any of the following methods: A Legal Materials Request Form (this form), a standard Inmate Request Form (cop-out) or by writing your request on a blank sheet of paper, so long as it abides by the rules listed above. **Requests that are written on the envelope will not be honored and will be returned uncompleted.**

4. **FOR LEGAL COPIES:** You must state as clearly as possible the amount of legal copies that you require (i.e. 3 copies of each page, front and back). All fasteners (to include staples, tape, stickers, paper clips, etc.) must be removed from your legal paperwork prior to submission. Failure to comply will result in your legal items being returned to you uncompleted. Copies will only be reproduced on one side of standard 8½" x 11" copy paper and the Library will not honor any requests for enlargements and/or reductions of your legal materials. In order to help maintain acceptable levels of legal materials, there is a LIMIT OF 5 COPIES per page unless you can provide a written court mandated need for more. Also, the Library WILL NOT make copies of BLANK LEGAL FORMS, these items are not considered to be legal in nature until something is written on the form. See Program Statement 1315.07 for a detailed explanation of all inmate legal activities.

5. **PRIOR TO RECEIVING YOUR LEGAL COPIES:** All inmates will be required to legibly sign a pre-completed form BP-199.045 (Request for Withdrawal of Inmate Personal Funds) in the amount for which it cost to complete the copies. This form will be provided to the inmate by the Law Library Staff (or its representative) when the completed copied are delivered. **All copies cost $0.15 per page.** When signing the form BP-199, **please provide your signature only** on the designated line. No political statements, nicknames or other written statements will be accepted. If you fail to abide by this rule, you <u>WILL NOT</u> receive your requested copies and an incident report may be written. Additionally, any inmate who **refuses to sign the form BP-199** <u>WILL NOT</u> receive his requested copies and an incident report may be written for your refusal to pay.

6. For further information on all Law Library services, please consult your SMU Inmate Handbook or see your unit's law library for a complete list of legal request rules and regulations (on the ELL computer, under the **Bulletin Board** section).

**ALL SUBMITTED REQUESTS ARE BASED UPON THE COMPETETIVE NEEDS OF ALL INMATES AND ARE SUBJECT TO THE NEEDS OF THE INSTITUTION.**

| Request # | Request (copy information, addresses, other) | Result |
|---|---|---|
| 1. | One (1) copy of these 2-pages | |
| 2. | ~~NOT LEGAL~~ OKAY, when you plan to file | |
| | ~~NO COPIES~~ your Civil Action + can provide | |
| 3. | ~~COMPLETED~~ proof that you are doing so, | |
| | The Library will make your | |
| | legal copies. See P.S. 1315.07 for | |
| | reference- | |

Date Completed by Staff: 3/18/19 CP

\* Notes: These are Administrative Remedies that I plan to file a civil action in federal court in the near future, and I need to send the court copies of these forms) so there fore they are legal in nature and I need copies. If not, I will file on you for retaliation against me for pursuing legal action)

---

*(left margin, handwritten, rotated):* X-Block/Cell #304   Cell #: 64459-061   Register #: Michael Lee Gordon   NAME:

## Clinical Radiology of Oklahoma
P.O. Box 2814 • Edmond, OK 73083-2814
Phone: 405-359-2400
Fax: 405-844-5716

**PATIENT NAME:**        GORDON, MICHAEL
**PATIENT ID #:**        64459-061
**DATE OF BIRTH:**       11/24/1974
**ORDERING PHYSICIAN:**  Jessie Ayers, PA-C
**DATE OF EXAM:**        01/30/2019
**SITE OF EXAM:**        Lewisburg USP

EXAMINATION: MRI LUMBAR SPINE

REASON FOR EXAMINATION:  Spinal stenosis with cauda equina syndrome.

FINDINGS:  There was a 9-degree levoscoliosis as measured from the superior endplate of L2 to the inferior endplate of L5.  No fracture nor subluxation.  Paraspinous soft tissues are intact.  The conus medullaris is normal.

L1-L2:  Facet joints are normal.  No central canal nor neuroforaminal stenosis.

L2-L3:  Facet joints are normal.  No central canal nor neuroforaminal stenosis.

L3-L4:  A 2 mm broad-based disk bulge with mild effacement of intrathecal sac.

L4-L5:  There is a 3-4 mm broad-based central disk herniation with anular fissure and possible impingement on both traversing L5 nerve roots (series 4, images 8 through 5). Minimal bilateral foraminal stenosis.

L5-S1:  A 3-4 mm posterior central disk herniation with mild superimposed broad-based disk bulge.  No obvious nerve impingement (series 6, image 3 and series 4, image 6).

IMPRESSION:

1.  L4-5:  There is a 3-4 mm broad-based central disk herniation with anular fissure and possible impingement on both traversing L5 nerve roots (series 4, images 8 through 5). Minimal bilateral foraminal stenosis.
2.  L5-S1:  A 3-4 mm posterior central disk herniation with mild superimposed broad-based disk bulge.  No obvious nerve impingement (series 6, image 3 and series 4, image 6).
3.  L3-L4:  A 2 mm broad-based disk bulge with mild effacement of intrathecal sac.
4.  A 9-degree levoscoliosis as measured from the superior endplate of L2 to the inferior endplate of L5.

Electronically signed at 01-31-2019 4:48 PM
(GMT -6)

Phyllis Kapellen, M.D.
PK/epms
DR: 01/31/2019   DT: 01/31/2019 Doc: M370958

CC: - Out

12-26-2018

TO: Dr. Edinger / Medical Department

From: Michael Lee Gordon          X-Block
      #64459-061                  cell# 327

Request

On 11-9-2017 I was involved in an on-the-job work-related injury, wherein I injured my lower back in the food service department.

I am experiencing difficulties from that injury that I sustained on 11-9-2018 sir. The following is what I request.

*1) I am "urinating and defecating" on myself and I request to be provided supplies that would aid and assist me with these problems, such as: Diapers, diaper wipes and/or rags to wipe and clean myself and place rags to put on my bed at night to prevent from soiling my bed at night while sleeping.

*2) I arrived here prescribed 30 mg of Duloxetine once per day and had that dose raised to 60 mg; however, duloxetine is not working and it is constipating me.

Can you prescribe me a low dose of Oxcarbazapin and/or Gabapentine to help me with the pain and stop my constipation please

2-10-2019

To: Sick-call / Dr. Edinger

From: Michael Lee Gordon          X-Block
         #64459-061                  cell # 303

<u>Request</u>

I am currently prescribed "Elavil" for pain that I experience from a back injury that occured in late 2017.

I was told that once I take an M.R.I, and the results were looked at I could request something more effective.

I am writing because my M.R.I was done about a month ago. I request to have the results reviewed and that I be provided a more effective medication to help me with the pain until surgery can be conducted to alleviate the pain by way of surgery.

Can you prescribe me a more effective pain medication please?

Thank You.

(SEE BACK)

First, there are no medicines to resolve your pain. Second, there are no medicines that I would say are "good" options. Third, you have already tried Duloxetine, Amitriptyline, and Gabapentin for this problem. Last, you have a significant history of drug abuse/misuse which further complicates the problem. What has worked for you in the past?

U.M. Edig...

Copy Out

2-20-2019

TO: Dr. Edinger / Medical

From: Michael Lee Gordon                    X-Block
      #64459-081                            cell# 303

_____ Request _____

Z am writing in response to your response to my sick-call request asking for a different pain medication and to answer your question "What has worked for me in the past?"

Dr. Edinger, Z just want to say that Z do not misuse drugs of any kind. Z have only been accused of checking my medication one time, which was here back in 2012.

To answer your question: Z have not been prescribed "Gabapentin" since this latest accident. Can Z try that and see how it helps? It did better than the Duloxetin and the Amitriptyline has done so far; when Z took it in the past.

*Note: Z assure you that there will be No issues or questions of whether Z took my medication in the future,

                          Thank You
                                        [signature]

I AM AWAITING NEUROSURGERY'S RECOMMENDATIONS

Con-Out

* Sick-Call Request *

3-19-2019

To: Dr. Edinger / Medical Department

From: Michael Lee Gordon          X-Block
      #64459-061                  cell# 304

Request

On Thursday, 3-14-2019, I went out to the outside hospital to speak with the Neurosurgeon about my lower back problems.

I consulted him regarding my options and he recommended that I try a Hydro cortisone injection supplemented with some type of pain/nerve medication to help alleviate the pain.

The neurosurgeon told me that a good supplement would be medication called:
1.) Nerotin  or  2.) Oxcarbazapin would be my best options.

I am writing you to notify you that my currently prescribed medication of "Anti-tripilgn" is not helping me at all. It makes me drouses and constipates me along with other side-effects that are not pleasant. Can you consider prescribing me one of the above medications please? Thank You

(SEE BACK)

You HAVE TAKEN NEURONTIN IN THE PAST
WITHOUT MUCH SUCCESS. IT MAY HAVE ALSO
CAUSED SOME PROBLEMS WITH HALLUCINATIONS
THE OXCARBAZEPINE HAS BEEN STUDIED IN PEOPLE
WITH YOUR CONDITIONS. IT HAS BEEN FOUND TO
NOT BE EFFECTIVE. YOUR BEST BET MAY BE
TO JUST STICK WITH IBUPROFEN.

Cop-out

✳ Sick - Call Request ✳

4-1-2019

To: Dr. Edinger / Medical

From: Michael Lee Gordon                    X-Block
         #64459-061                              cell# 304

—— Request ——

    I am writing to make one last request of you to reconsider your decision to only treat my pain in my lower back with merely Ibruprofen please?

    I prayerfully beg you for "something" different or other than just Ibruprofen sir. I request an Hydrocortisone injection into my spinal area and/or some type of other medication to be prescribed to assist with the pain.

    I am in a severely amount of pain that is debilitating and affects my daily activities sir.

    I would rather you help me than for me to file or go above your head in this matter. I would appreciate a response to this cop-out, as I did not receive one to my last cop-out dated 3-23-2019.

        Thank You,        (SEE ATTACHED NOTE)

A.M. Eding

Gordon, Michael (MRN 741520176) DOB: 11/24/1974                    Encounter Date: 03/14/2019

| | | |
|---|---|---|
| 1. | Herniated nucleus pulposus, L5-S1 diffuse | M51.27 |
| 2. | Lumbar degenerative disc disease, L4-5 and L5-S1 | M51.36 |
| 3. | Bilateral lumbar radiculopathy | M54.16 |
| 4. | Chronic bilateral low back pain with bilateral sciatica | M54.42 |
| | | M54.41 |
| | | G89.29 |

**Patient Active Problem List**
Diagnosis

- Herniated nucleus pulposus, L5-S1 diffuse
- Lumbar degenerative disc disease, L4-5 and L5-S1
- Bilateral lumbar radiculopathy
- Chronic bilateral low back pain with bilateral sciatica

Return for Pending if patient decides to proceed with injections.

## Patient Instructions

Dr. Rajjoub does not recommend surgery at this time.

Please continue with conservative measures including use of ibuprofen, stretches, and exercises.

✱ We can try set of epidural injections if he would like. — *THIS OPTION MAY HELP WITH NERVE PAIN DOWN YOUR LEG, BUT IS UNLIKELY TO HAVE ANY IMPACT ON BACK PAIN.*

HOLLY N SHADLE, CRNP

## Other Notes

📄 Patient Instructions from Shadle, Holly N, CRNP (Neurosurgery)

## Instructions

📑 Return for Pending if patient decides to proceed with injections.

Dr. Rajjoub does not recommend surgery at this time.

Please continue with conservative measures including use of ibuprofen, stretches, and exercises.

We can try set of epidural injections if he would like.

## Additional Documentation

| | |
|---|---|
| Vitals: | BP 118/82 Pulse 76 Temp 97.9 °F (36.6 °C) (Tympanic) Resp 18 Ht 6' (182.9 cm) Wt 210 lb (95.3 kg) BMI 28.48 kg/m² BSA 2.18 m² |
| Flowsheets: | Pain, Vitals |
| Encounter Info: | History, Allergies, Detailed Report, Billing Info, Patient Questionnaires |

# USP LEWISBURG
## SPECIAL
## MANAGEMENT
## UNIT POPULATION

 SMU 

# Institution Admission and
# Orientation Handbook



## 2018

2

<u>INTRODUCTION</u>

You have been assigned to the Special Management Unit (SMU) at the United States Penitentiary (USP), Lewisburg, Pennsylvania. The SMU program is a multi-level program whose mission is to teach self-discipline, pro-social values, and the ability to successfully coexist with members of other geographical, cultural, and religious backgrounds. USP Lewisburg offers Levels One, Two, and Three of the program. Ordinarily, this program will be completed within

9-13 months.

Successful completion requires strict adherence to the rules and regulations of the unit. In addition, completion of the program requires your active participation in self-study, individual, and group activities geared toward the development of behavior and values that will allow for successful reintegration into a general population.

Advancement through the levels of this program is dependent on observed behavior and program participation. As you progress to the higher levels of the program, you will earn additional privileges. Lack of effort, rule and disciplinary infractions, or a poor attitude may result in delaying completion of the program, to include repeating levels. Progress in the program is evaluated by a multi-disciplinary team ordinarily consisting of Executive, Unit, Correctional, Psychology, and Educational staff.

The Unit Team will consist of a Counselor, Case Manager, and Unit Manager. Caseloads will be divided by housing units.

This inmate handbook is designed to present a general overview of the SMU program at USP Lewisburg. It is not intended to be a complete guide to all rules and regulations governing inmate behavior. It is intended to assist you in understanding and adjusting to your new institution. Additionally, radio station 88.5 FM broadcasts an audio version of the Admission and Orientation (A&O) lecture every Wednesday beginning at 9:00 a.m.

<u>SMU PROGRESSION AND PROGRAM COMPLETION</u>

As dictated by the Program Statement 5217.02, <u>Special Management Units</u> (SMU), dated August 9, 2016, inmates will be reviewed within the first 28 days of their arrival and subsequently, every 90 days through Levels One, Two, and Three.

These reviews will be conducted by members of the Unit Team, Education, Correctional Services, Psychology, and chaired by the Associate Warden of Programs. These reviews will be used to determine the progression through levels. Inmates found guilty of disciplinary actions in the greatest or high category will ordinarily be returned to the previously completed level or all the way back to Level One. In situations where an inmate is pending a Disciplinary Hearing with the Disciplinary Hearing Officer (DHO), he may be placed in the housing level commensurate with the infraction until the hearing is conducted. During this time, he will still be eligible for privileges at his SMU level. If the inmate is found guilty of the infraction, he will lose those privileges; return to the previously completed level; to include Level One. If the inmate is found not guilty by the DHO, the inmate will retain his current level with all the time and effort being credited to the current level.

Upon entry into Level Three, inmates will be referred via 325 Program Completion transfer.

If an inmate fails to complete the SMU program within 24 consecutive months, he will be placed in SMU Fail status. A thorough review will be conducted by the Correctional Programs Division (CPD) in the Central Office, which will make a recommendation for the inmate's placement in an appropriate institution.

Program Completion

Upon successful completion of the SMU Program, Unit Team staff will refer inmates for a Program Complete Transfer to an institution commensurate with their security and custody needs.

<u>PSYCHOLOGY SERVICES</u>

In preparation for return to general population, you are required to complete mandatory treatment services (see APPENDIX A for SMU curriculum). These services include self-study, individual, and group activities provided by Psychology Services. Your program participation will determine your readiness to progress through each level of the unit.

In addition to mandatory SMU programs, Psychology Services will be responsible for providing mental health services to SMU participants on an as-needed basis.

SMU A&O Handbook USP LEWISBURG

**Psychology Staff**

- **Contacting a Psychologist:**

  A psychologist remains on-call 24 hours per day, seven days per week.  If you have a mental health emergency (e.g. suicidal thoughts, psychosis) inform any staff member you need to speak with a psychologist immediately.  For problems that are not emergencies, speak with a psychologist during rounds or send the unit psychologist a cop-out.  The majority of psychotropic medication needs are managed by the institution Health Services department and should be addressed through appropriate sick call procedures.

- **Confidentiality/Privacy:**

  It is important to outline measures we take to respect your privacy when you participate in Psychology programs.  We keep electronic records of our contacts with inmates.  These records are the property of the BOP, but we protect and manage them.  That means we do not routinely make our records available to staff members outside the Federal Government, with some exceptions.  The Privacy Act and the Freedom of Information Act govern the FBOPs management of your records.  Ordinarily, we disclose our records with your understanding and support; however, there are times when we may communicate information without your consent.  When we are asked by staff to evaluate your mental status, usually because the staff is concerned that you might have deteriorating mental health, we will do so.

  Sometimes the DHO will ask us to evaluate your competency to proceed with the disciplinary process.  Anytime we perceive a threat to you, someone else, or to the security of the institution, we will communicate whatever information is required to address that concern.

  Alcohol and drugs are always considered a security threat, so if you tell us you have them, are using them, or know that someone else has or is using them, we are required to report that information.  If you have any questions or concerns about confidentiality or privacy, ask a psychologist about it.

- **Suicide Prevention:**

  It is not uncommon for people to experience depression and hopelessness while in jail or prison, particularly if they are serving a long sentence, are experiencing family problems or problems getting along with other inmates, or receive bad news.  Sometimes, inmates consider committing suicide due to all of the pressure they are under.  Staff are trained to monitor inmates for signs of suicidality, and are trained to refer concerns to the Psychology Department.  However, staff does not always see what inmates see.  If you are personally experiencing any of the problems noted above, or you or another inmate are showing signs of depression (sadness, tearfulness, lack of enjoyment in usual activities), withdrawal (staying away from others), or hopelessness (giving away possessions, stating that "there is nothing to live for"), please alert a staff member right away.

**Psych-Educational Programs/DAP**

Psychology Services provides self-help/personal-growth materials in the form of workbooks, articles, and books designed to introduce you to ideas and concepts which encourage positive change.  Some of these will be required for program advancement (see handbook) and others are provided solely by request.  We encourage you to take full advantage of the materials available to you.

The logistical restrictions inherent in the SMU program make offering formal Drug Abuse Programs impossible; however, related self-study materials and cell-side counseling provided by treatment specialists will be available.  We strongly encourage your participation in formal DAP programs upon your eventual return to a mainline facility.

<u>Sexually Abusive Behavior Prevention and Intervention - *Overview for Offenders*</u>

You Have the Right to be Safe from Sexually Abusive Behavior.

The Federal Bureau of Prisons has a **zero tolerance** policy against sexual abuse and sexual harassment.  While you are incarcerated, no one has the right to pressure you to engage in sexual acts.

You do not have to tolerate sexually abusive/harassing behavior or pressure to engage in unwanted sexual behavior from another inmate or a staff member.

4

**Regardless of your age, size, race, ethnicity, gender or sexual orientation, you have the right to be safe from sexually abusive behavic The Federal Bureau of Prisons has a <u>Zero Tolerance</u> policy against sexual abuse and sexual harassment.**

**What Can You Do To Prevent Sexually Abusive Behavior?**

Here are some things you can do to protect yourself and others against sexually abusive behavior:

- Carry yourself in a confident manner at all times.  Do not permit your emotions (fear/anxiety) to be obvious to others.

- Do not accept gifts or favors from others.  Most gifts or favors come with strings attached to them.

- Do not accept an offer from another inmate to be your protector.

- Find a staff member with whom you feel comfortable discussing your fears and concerns.

- Be alert!  Do not use contraband substances such as drugs or alcohol; these can weaken your ability to stay alert and make good judgment

- Be direct and firm if others ask you to do something you don't want to do.  Do not give mixed messages to other inmates regarding y wishes for sexual activity.

- Stay in well-lit areas of the institution.

- Choose your associates wisely.  Look for people who are involved in positive activities like educational programs, psychology groups religious services.  Get involved in these activities yourself.

- Trust your instincts.  If you sense that a situation may be dangerous, it probably is.  If you fear for your safety, report your concerns to st:

**What Can You Do if You Are Afraid or Feel Threatened?**

If you are afraid or feel you are being threatened or pressured to engage in sexual behaviors, you should discuss your concerns with staff.  Becau this can be a difficult topic to discuss, some staff, like Psychologists, are specially trained to help you deal with problems in this area.  If you feel immediately threatened approach any staff member and ask for assistance.  It is part of his/her job to ensure your safety.  If it is a staff member threatening you, report your concerns immediately to another staff member that you trust, or follow the procedures for making a confidential repoi

**What Can You Do if You Are Sexually Assaulted?**

If you become a victim of a sexually abusive behavior, you should report it immediately to staff who will offer you protection from the assailant.  Yc do not have to name the inmate(s) or staff assailant(s) in order to receive assistance, but specific information may make it easier for staff to know how best to respond.  You will continue to receive protection from the assailant, whether or not you have identified him or her (or agree to testify against him/her).

After reporting any sexual assault, you will be referred immediately for a medical examination and clinical assessment.  Even though you many w: to clean up after the assault, it is important to see medical staff BEFORE you shower, wash, drink, eat, change clothing, or use the bathroom.  Me: cal staff will examine you for injuries which may or may not be readily apparent to you.  They can also check you for sexually transmitted diseases and gather any physical evidence of assault.  Individuals who sexually abuse or assault inmates can only be disciplined, and/or prosecuted, if the abuse is reported.  Regardless of whether your assailant is an inmate or a staff member, it is important to understand you will never be disciplined prosecuted for being the victim of a sexual assault.

**How Do You Report an Incident of Sexually Abusive Behavior?**

It is important you tell a staff member if you have been sexually assaulted or have been a victim of sexual harassment.  It is equally important to inform staff if you have witnessed sexually abusive behavior.  You can tell your Case Manager, Chaplain, Psychologist, SIS, the Warden, or any other staff member you trust.  BOP staff members are instructed to keep reported information confidential and only discuss it with the appropriate officials on a need-to-know basis concerning the inmate-victim's welfare and for law enforcement or investigative purposes.  There are other mear to confidentiality report sexually abusive behavior if you are not comfortable talking with staff.

- Write directly to the Warden, Regional Director, or Director.  You can send the Warden an Inmate Request to Staff Member (Cop-Out) or a letter reporting the sexually abusive behavior.  You may also send a letter to the Regional Director or Director of the Bureau of Prisons.  To ensure confidentiality, use special mail procedures.

- File an Administrative Remedy.  You can file a Request for Administrative Remedy (BP-9).  If you determine your complaint is too sensitive to file with the Warden, you have the opportunity to file your administrative remedy directly with the Regional Director (BP-10).  You can get the forms from your counselor or other unit staff.

- Write the Office of the Inspector General (OIG) which investigates certain allegations of staff misconduct by employees of the U.S. Department of Justice; all other sexual abuse/harassment allegations will be forwarded by the OIG to the BOP.  OIG is a component of the Department of Justice and is not a part of the Bureau of Prisons.  The address is:

**Office of the Inspector General**
**U.S. Department of Justice-Investigations Division**
**950 Pennsylvania Avenue, N.W.**
**Room 4706**
**Washington, D.C. 20530**

**Third-Party Reporting.**  Anyone can report such abuse on your behalf by accessing the BOP's public website, specifically:  http://www.bop.gov/ nmate_programs/sa_prevention_reporting.jsp

**Understanding the Investigative Process**

Once the sexually abusive behavior is reported, the BOP and/or other appropriate law enforcement agencies will conduct an investigation.  The purpose of the investigation is to determine the nature and scope of the abusive behavior.  You may be asked to give a statement during the investigation.  If criminal charges are brought, you may be asked to testify during the criminal proceedings.

**Supportive & Treatment Services**

Most people need help to recover from the emotional effects of sexually abusive behavior.  If you are the victim of sexually abusive behavior, whether recent or in the past, you may seek counseling and/or advice from a Psychologist or Chaplain.  Crisis counseling, coping skills, suicide prevention, mental health counseling, and spiritual counseling are all available to you at this facility.  When you report being the victim of sexually abusive behavior or sexual harassment, you will be assessed by a Psychologist.  Available supportive services will be discussed in detail at that time.  Additionally, if you prefer to contact outside sexual abuse emotional support services, you can call **Transitions Rape Crisis Center (570)523-1134 (P.O. Box 170, Lewisburg PA 17837).**  However, be aware that inmate communication is monitored in a manner consistent with agency security practices.

**Management Program for Inmate Assailants**

Anyone who sexually abuses/assaults/harasses others while in the custody of the BOP will be disciplined and prosecuted to the fullest extent of the law.  If you are an inmate assailant, you will be referred to Correctional Services for monitoring.  You will be referred to Psychology Services for an assessment of risk, treatment, and management needs.  Treatment compliance or refusal will be documented and decisions regarding your conditions of confinement and release may be effected.  If you feel you need help to keep from engaging in sexually abusive behaviors, psychological services are available.

**Policy Definitions**

**Prohibited Acts:**  Inmates who engage in inappropriate sexual behavior can be charged with the following Prohibited Acts under the Inmate Disciplinary policy:

| | |
|---|---|
| Code 114/ (A): | Sexual Assault by Force |
| Code 205/ (A): | Engaging in a Sex Act |
| Code 206/ (A): | Making a Sexual Proposal |
| Code 221/ (A): | Being in an Unauthorized Area with a Member of the Opposite Sex |

SMU A&O Handbook USP LEWISBURG

6

| | |
|---|---|
| Code 229/ (A): | Sexual Assault without Force |
| Code 300/ (A): | Indecent Exposure |
| Code 404/ (A): | Using Abusive or Obscene Language |

**Staff Misconduct:** The Standards of Employee Conduct prohibit employees from engaging in, or allowing another person to engage in sexual, decent, profane or abusive language or gestures, and inappropriate visual surveillance of inmates. Influencing, promising or threatening an inm. safety, custody, privacy, housing, privileges, work detail or program status in exchange for sexual favors is also prohibited.

**What is sexually abusive behavior?** According to federal law (Prison Rape Elimination Act of 2003) sexually abusive behavior is defined as:

**Rape:** the carnal knowledge, oral sodomy, or sexual assault with an object or sexual fondling of a person FORCIBLY or against that person's v the carnal knowledge, oral sodomy, or sexual assault with an object or sexual fondling of a person not forcibly or against the person's will, wher. victim is incapable of giving consent because of his/her youth or his/her temporary or permanent mental or physical incapacity; or the carnal kno edge, oral sodomy, or sexual assault with an object or sexual fondling of a person achieved through the exploitation of the fear or threat of phys. violence or bodily injury.

**Carnal Knowledge:** contact between the penis and vulva or the penis and the anus, including penetration of any sort, however slight.

**Oral Sodomy:** contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus.

**Sexual Assault with an Object:** the use of any hand, finger, object, or other instrument to penetrate, however slightly, the genital or anal openi. of the body of another person (NOTE: This does NOT apply to custodial or medical personnel engaged in evidence gathering or legitimate medic treatment, nor to health care provider's performing body cavity searches in order to maintain security and safety within the prison).

**Sexual Fondling:** the touching of the private body parts of another person (including the genitalia, anus, groin, breast, inner thigh, or buttocks) the purpose of sexual gratification.

**Sexual Harassment:** repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a dero tory or offensive sexual nature by one inmate/detainee/resident to another; or repeated verbal comments or gestures of a sexual nature to an inr detainee/resident by a staff member/contractor/volunteer, including demeaning references to gender, sexually suggestive, or derogatory commen about body or clothing, or obscene language or gestures.

**Sexual Misconduct (staff only):** the use of indecent sexual language, gestures, or sexually oriented visual surveillance for the purpose of sexu gratification.

An incident is considered Inmate-on-Inmate Abuse/Assault when any sexually abusive behavior occurs between two or more inmates  An incide considered Staff-on-Inmate Abuse/Assault when any sexually abusive behavior is initiated by a staff member toward one or more inmates. It is a considered Staff-on-Inmate Abuse/Assault if a staff member willingly engages in sexual acts or contacts that are initiated by an inmate.

**NOTE:** Sexual acts or contacts between two or more inmates, even when no objections are raised, are prohibited acts, and may be illegal.  Sext acts or contacts between an inmate and a staff member, even when no objections are raised by either party, are always forbidden and illegal.  In- mates who have been sexually assaulted by another inmate or staff member will not be prosecuted or disciplined for reporting the assault. Howe inmates will be penalized for knowingly filing any false report.

**\*\* Please be aware that both male and female staff routinely work and visit inmate housing areas. \***

**Contact Offices:**
**U.S. Department of Justice**
**Office of the Inspector General**
**Investigations Division**
**950 Pennsylvania Avenue, NW Suite 4706**
**Washington, D.C. 20530**

Federal Bureau of Prisons
Central Office
National PREA Coordinator
320 First Street, NW, Room 554
Washington, D.C. 20534

Federal Bureau of Prisons
Mid-Atlantic Regional Office
Regional PREA Coordinator
302 Sentinel Drive, Suite 200
Annapolis Junction, Maryland 20701

Federal Bureau of Prisons
North Central Regional Office
Regional PREA Coordinator
Gateway Complex Tower II, 8th Floor
400 State Avenue
Kansas City, KS 66101-2492

Federal Bureau of Prisons
Northeast Regional Office
Regional PREA Coordinator
U.S. Customs House, 7th Floor
2nd and Chestnut Streets
Philadelphia, Pennsylvania 19106

Federal Bureau of Prisons
South Central Regional Office
Regional PREA Coordinator
U.S. Armed Forces Reserve Complex
344 Marine Forces Drive
Grand Prairie, Texas 75051

Federal Bureau of Prisons
Southeast Regional Office
Regional PREA Coordinator
3800 North Camp Creek Parkway, SW
Building 2000
Atlanta, GA 30331-5099

Federal Bureau of Prisons
Western Regional Office
Regional PREA Coordinator
7338 Shoreline Drive
Stockton, CA 95219

## Third-Party Reporting (outside of institution):

 http://www.bop.gov/inmate_programs/sa_prevention_reporting.jsp

## DIVERSITY IN A PRISON ENVIRONMENT

### What is Diversity?

Diversity in a prison environment can be characterized by the differences and uniqueness each individual brings to this institution. These differences are observed through race, religion, ethnicity, and geographic background. All of these factors create the environment in which you are now apart. So, what is your responsibility to yourself, the other inmates, and the staff of this institution? Contrary to the differences within this institution your responsibility is to distinguish between right and wrong by enhancing your knowledge of this diverse landscape. Become aware of the pitfalls (gangs, drugs, and prison politics). This will enable you to chart a course to avoid the traps and achieve success. Consider having the following values of Respect, Tolerance, Honesty, and Responsibility as a part of the compass which directs your decision making. When these values are a work in your life, your attitude toward individual differences will be evident through your contribution toward a safe environment.

### How is it reflected in this environment?

| | | |
|---|---|---|
| A. | Race: | Your family background, lineage or people compose your race. |
| B. | Religion: | Protestant, Islam, Judaism, Native American, Roman Catholic, other. |
| C. | Ethnicity: | Common traits or customs. |
| D. | Geographic Background: | Where I lived for any period of time. |

### What is my responsibility?

A.     Distinguish between right and wrong.

B.     Increase knowledge by participation.

C.     Determine best practice to succeed.

### How do I reflect a right attitude?

| | | |
|---|---|---|
| A. | Respect: | Considering others as I would like to be considered. |
| B. | Honesty: | Without desire to lie. Genuine. |
| C. | Tolerance: | Patience and understanding. |
| D. | Accountability: | Responsible for my own actions. |

### The Bureau's Stance on Diversity

Zero tolerance for those that do not reflect an attitude of diversity. Rule breakers receive incident reports or other sanctions.

## RELIGIOUS SERVICES

**Programs that Enhance Reentry Success**

The Chaplains can provide addresses for ministries which supply correspondence courses during your time in the SMU program. The Chapel library has extensive resources available for your spiritual growth. A list of available softcover books is posted on the TRULINCS computer system under local documents. The book lists are posted by religion.

**Utilization of Spiritual Resources While Incarcerated**

A list of Holy Days, Fast Days, and Ceremonial Meals is located on the TRULINCS computer system. Deadlines for submission of written requests are also included. All accommodations must be requested in writing individually.

**Tolerance and Understanding** – People of All Races/Religions

If Lewisburg is your first assignment in the BOP, your Unit Team will denote your religious preference. If you would like to change your religious preference, you must submit a written request to the Chaplain. USP Lewisburg is home to people from all over the United States and the world. There are inmates from 22 different religious groups housed in this institution. Please show respect to those from different backgrounds and religions. Many world religions have some variation of the rule, "Do unto others as you would have them do unto you." No one may disparage the religious beliefs of an inmate, nor coerce or harass an inmate to change religious affiliation.

**Schedules**

There are no congregate religious programs for inmates in the Special Management Unit.

**Chaplain Duty Hours:** The Chaplains' schedules are printed below.

| Chaplain CARNEY: | Chaplain DAVIS: |
|---|---|
| Sun   12:15-8:45 | Sun   12:00-8:30 |
| Mon   11:00-7:30 | Mon   11:00-7:30 |
| Tues  7:30-4:00 | Tues  9:00-5:30 |
| Wed   9:00-5:30 | Wed   9:00-5:30 |
| Thurs 7:30-4:00 | Thurs 9:00-5:30 |
| Fri/Sat  OFF | Fri/Sat   OFF |
| **Chaplain LEININGER:** | **Chaplain AYRES:** |
| Sun   12:00-8:30 | Sun   12:00-8:30 |
| Mon/Tues  OFF | Mon   7:30-4:00 |
| Wed   9:00-5:30 | Tues  9:00-5:30 |
| Thurs 7:30-4:00 | Wed/Thurs  OFF |
| Fri   12:00-8:30 | Fri   12:00-8:30 |
| Sat   7:30-4:00 | Sat   7:30-4:00 |

**Community Resources Available**

**Pastoral Visits:** If requested by an inmate, the Chaplain shall attempt to facilitate arrangements for pastoral visits by a clergy person or representative of the inmate's faith. The Chaplain may request an NCIC check and documentation of such clergy person's or faith group representative's credentials. Pastoral visits may not be counted as social visits. They will ordinarily take place in the visiting room during regular visiting hours.

**Minister of Record:** You may designate one individual on your visiting list as your Minister of Record (MOR) by submitting a request to the Chaplain. This request must include contact information for the MOR so the Chaplain can obtain credentials and security checks for the MOR. An approved MOR will not count against the maximum number of visitors you are allowed to have on your visiting list, and may visit during normal visiting hours.

**Prisoner Visitation & Support (PVS):** Inmates wishing to receive visits from PVS should submit a written request to the Reentry Affairs Coordinator to be placed on the waiting list.

**Procedures for Acquiring Religious Items, Literature, and Property**

Authorized personal religious items will be purchased/acquired by the adherent. Authorized items available from Commissary may be purchased by those whose religious preference reflects a need for those items. Authorized items not available from Commissary may be purchased via Special Purpose Order from an approved vender. Items should be less than $100 in value. Catalogues are available from the Chaplain upon submission of a written request. Authorized items not available for purchase may be acquired via the Authorization to Receive a Package form (i.e., eagle feathers, elekes, etc.). Submit a written request to the Chaplain for the form. Softcover books may be checked out from the Chapel library in two week increments. Loaned books must be returned to the Chaplain in order to receive new books. Books are traded on a one-for-one basis.

You may also purchase personal religious books following the procedures outlined in Program Statement 5266.11, Incoming Publications.

**Religious Diet Program**

**Initial Interview:** Inmates must submit a written request to be interviewed by the Religious Services Department. The chaplaincy team will review the answers to your interview. A determination will be made to approve you for self-selection from mainline, with access to a no-flesh option or for the certified processed food tray. You will be notified in writing of the accommodation on form BP-S700.053, Notification of Religious Diet Accommodation. If approved to the certified food component, Food Service will ordinarily begin serving the certified food tray in two working days, under normal operations. Those not approved for the certified food line may request a re-interview at six-month intervals.

**Removal:** An inmate may be removed from the certified food diet if he is observed: Eating food from mainline; missing six consecutive meals; changing his religious preference; and/or purchasing food from commissary that is not permissible to eat based on his religious requirements. Removal is not punitive in nature but provides an opportunity for the inmate and staff to reevaluate this program's appropriateness to meet the inmate's demonstrated needs. The process of re-approving a religious diet for an inmate who voluntarily withdraws or who is removed ordinarily may extend up to thirty days. Repeated withdrawals (voluntary or otherwise); however, may result in inmates being subjected to a waiting period of up to one year. At the inmate's request for reinstatement, an oral interview will be conducted prior to reinstatement.

**Religious Rights of Inmates**

Opportunities for religious activities are open to the entire inmate population, without regard to race, color, nationality, or ordinarily, creed. The Warden, after consulting with the institution Chaplain, may limit participation in a particular religious activity or practice to the members of that religious group. Ordinarily, when the nature of the activity or practice (e.g., religious fasts, wearing of headwear, work proscription, ceremonial meals) indicates a need for such a limitation, only those inmates whose files reflect the pertinent religious preference will be included. When seeking a religious accommodation, you should submit the request in writing, and the Chaplain will attempt to accommodate your request within the bounds of policy.

**Procedures for Family to Contact Institution in Case of Emergency**

In the event an immediate member of your family (mother/father, brother/sister, son/daughter or spouse), is taken to the hospital or dies, a member of your family may call (570) 523-1251 and request to speak to a Chaplain. The caller will need your registration number, the name of the individual involved, and the name, address, and telephone number of the hospital or funeral home.

This information will be verified before you are notified. If the information received cannot be verified by an outside agency (hospital, funeral home, law enforcement, etc.), you will not be notified. After the information has been verified, a Chaplain will notify you of the emergency, and if appropriate, arrange for you to communicate with your family.

**Availability of Religious Counseling for Crisis Intervention**

Chaplains are available for pastoral counseling during rounds in the Special Management Unit blocks. Chaplains are available for pastoral counseling by appointment through the submission of a written request. All requests for religious counseling will be conducted at the cell door.

**KEEPING IN TOUCH**

**SMU Telephone Calls**

Inmates participating in the SMU Program at the USP who wish to utilize ITS for calling privileges, will need to generate and maintain their phone lists using the contacts field in TRULINCS. Inmates will be allowed to make changes to their phone lists once every (30) days. Once a phone list is generated, the phone numbers on the inmate ITS account will transfer in/out from institution to institution

Provided there are no telephone restrictions as the result of disciplinary sanctions or other administrative reasons, inmates in Level One will be permitted two (2) 15-minute telephone calls per month. Inmates in Level Two will be permitted four (4) 15-minute calls per month. Access to the telephone in Levels One and Two is based on calls per month, not minutes. Inmates in Level Three will be permitted fifteen (15) phone calls per month, not to exceed 150 minutes. Inmates in SMU COMPLETE status will receive the same phone privileges as Level 3. Replacement calls will not be given due to the call being dropped by the called party or dropped due to the called party's cell phone. The telephones utilized by inmates are **MONITORED and TAPED.**

**Legal Telephone Calls**

All legal calls require the approval of the Unit Team. Unit Team staff will set up and supervise legal calls.

**Special Mail**

Delivery of special mail will be the responsibility of the Unit Team. Outgoing special mail will be collected by staff each day, with the exception of weekends and holidays.

**Postage Stamps**

Inmates with funds will be expected to purchase their own stamps. Inmates determined to be indigent by their Unit Team will be issued postage stamps according to policy, provided a written request is made to their Unit Team.

**Visiting**

Provided there are no visiting restrictions as the result of disciplinary or other reasons, visitation for inmates in all SMU Levels (One, Two, and Three) will be facilitated via video visiting, and will only be available to immediate family members, which include parents or (legal guardians which must be verified), siblings, offspring, spouses, and grandparents. The relationship must be verified. These visits are limited to one hour only.

Inmates in all levels must submit a request in writing to the Unit Manager, at least two weeks in advance of the expected visit. As the availability of video equipment will be limited, visits will be limited to one hour per inmate (more time may be allotted based on availability of visiting booths/equipment).

Visits will be scheduled in accordance with the availability of video equipment needed to facilitate the visit, and rotated according to the level and the living quarters.  NOTE:  Visitation is subject to monitoring and participation in the visiting process constitutes consent to this monitoring.

Local hotels are as follows:

Rodeway Inn,  Lewisburg 1-800-424-6423

Days Inn,    Lewisburg 1-800-241-5050, en Espanol 1-888-709-4024

Econolodge,   Lewisburg 1-877-424-6423

Best Western, Lewisburg 1-877-574-2464


These hotels are located along PA State Route 15.  USP Lewisburg is located approximately two miles west along William Penn Road off Route 15. There are signs indicating the visitor's entrance to USP Lewisburg.

Local transportation services for the Lewisburg, PA, area is limited to:

Aurora Taxi, Lewisburg 570-523-1400

Telos Taxi,  Lewisburg 570-523-8294


**Visiting Times**

Visiting hours at the Penitentiary are 8:00 a.m. until 3:00 p.m., Saturday and Sunday.  There will be no visitation Monday through Friday, with the exception of Federal holidays falling on any of these days.  Visitors arriving after 2:30 p.m. will not be admitted to visit.

**Age Limitations**

Visiting is disallowed for those persons who have not attained their 18th birthday, unless accompanied by a legal guardian, or an immediate family member who is over 18 years-of-age.

**Number of Visitors at One Time**

Visiting groups will be kept to a reasonable size, i.e., no more than five (5) persons (including children) at one time.

**Miscellaneous Visiting Rules**

Inmates are responsible to inform prospective visitors that dress should be appropriate for an institutional setting and should not present possible disrespect to others, who may be present in the Visiting Video area.  Individuals who are dressed in revealing clothing will not be allowed to enter the institution for visiting.  Shorts and skirts that cover the knee while standing up will be permitted.  Additionally, tank tops, sleeveless clothing, or see-through tops are not permitted.  Shirts or blouses must cover the midriff while standing.  Children, 12 and under, are the only individuals who will be allowed to wear shorts above the knee, tank tops, or sleeveless clothing.  No ball caps, hats, bandanas, sweat bands, do-rags, or any other type of head gear, is authorized with the exception of religious head gear.  Visitors will be denied a visit, when Supervisory staff (i.e., Lieutenant, Du Officer, etc.), determine a visitor's dress is inappropriate for the institutional setting.

Visitor will be required to present a current government photo identification card that will be retained until the end of the visit by the front desk office during the visit.  Visitors are not permitted to bring any items to be given to inmates.

All visitors must be on the approved visiting list.  They are subject to search, clearing a metal detector, and cooperating with an Ion Scan.  Any visit not on your approved visiting list and or not willing to participate in any of these screenings will be refused entry.  Any visitor becoming belligerent with staff or another visitor will not be permitted to visit.

SMU A&O Handbook USP LEWISBURG

**Special Visits for Family Emergencies**

No provisions outside the previously stated procedures are in place for this type of visit. All visits will be handled as previously stated.

**Legal Visits**

Legal visits will be contact, unless a specific security concern warrants otherwise. Legal visits will be set up by Unit Team staff.

## PROPERTY

Inmates confined in the SMU program will be provided a means to access legal materials, along with the opportunity to prepare legal documents. Given this, consideration of the needs of other inmates and the availability of staff or other resources will be weighed in each instance.

A reasonable amount of personal legal materials will be permitted within the living space so as not to pose a fire, sanitation, security, or housekeeping hazard. For the approved property breakdown, see APPENDIX B. In order to request legal property or any property, a request to staff must be completed and handed to a member of your Unit Team. They will forward it to the Property Officer. Depending on the items requested, you may be brought to the property area to be issued your items. In some cases, it may be brought to you by the Property Officer.

## COMMISARRY

Inmates in all SMU Levels (One, Two, and Three) will shop on a bi-weekly basis. The specific day of the week an inmate shops from the commissary may vary from week to week due to institution needs. There are two (2) authorized commissary lists for the SMU Levels – Levels One & Two and Levels Three & Complete. Inmates who are placed on commissary restriction will be able to purchase stamps, hygiene items, and over-the-counter medications (as specified by staff).

## PERSONAL UPKEEP - HYGIENE

**Razors**

All SMU Levels (One, Two, and Three) inmates will be afforded the use of hair/beard clippers two (2) times per month and may purchase a non-razor shaving product from the commissary.

**Hygiene Items and Supplies**

Hygiene items, toothbrushes, toilet paper, writing paper, pencils, envelopes, etc., will be issued by Correctional Services staff. Pencils and toothbrushes will be issued on an exchange basis. Cleaning supplies will be issued on an as needed basis by staff. Inmates are required to keep their cells clean and orderly.

**Haircuts**

Inmates may submit a written request to the Unit Block Officer no later than the Friday of the preceding week if they wish to be scheduled for a haircut. Inmates are permitted one (1) haircut per month.

**Shower Schedule**

Showers will be provided three (3) times per week.

SMU A&O Handbook USP LEWISBURG

14

## CELL SANITATION

There will be nothing attached to the windows, walls, sinks, or light fixtures.  Window sills will be kept clean at all times.  Cells will be kept clean and tidy at all times.  Cells will be cleaned daily.  Beds will be made by 8:00 a.m. on a daily basis.

Any newspapers older than two weeks or magazines older than two months or that have missing pages or have been modified in any way are considered contraband and will be removed from the cell.  Failure to follow sanitation standards may result in an incident report.

Housekeeping, cleanliness, and storage of food items and clothing are an important aspect of your stay here.  You are to maintain proper levels of sanitation in your cell at all times.

The accumulation of food items, newspapers, magazines, books, etc., is a safety/fire hazard.  Items will be confiscated and disciplinary action may be taken.

No items may be displayed or pictures drawn on the cell walls, window, light covers, or doors.  These items include, but are not limited to, family/personal photos, magazine pictures, newspaper, calendars, cloth lines, gang graffiti etc.  The Unit Officer will be responsible for scheduling weekly cell cleaning.

## CELL MOVES

Cell moves will be conducted at least once every twenty-one (21) days.  Staff will determine housing assignments; cell moves are not optional.  Refusing cell moves will result in an incident report and other actions deemed appropriate by staff.

## SAFETY

### Pest Control

The Environmental and Safety Compliance Department is responsible for Pest Control Management.

Integrated Pest Management procedures will first be used with non-toxic baits and traps.  Other measures may be used when approved by the Environmental and Safety Compliance Administrator.

Units and cells will be treated, as needed.  If you have a pest control problem in your cell, you may send a cop-out to the Environmental and Safety Compliance Department to request treatment.

Prior to any treatment in your cell, your cell must be clean, no food/drink items exposed, and items (shoes, papers, etc.) must be picked up off the floor prior to treatment.  If cell sanitation is poor, pest control treatment will not be conducted.

### Fire Safety

Staff at the institution are trained in using emergency fire suppression equipment such as fire extinguishers, standpipe hoses, manual pull stations, and other.  During a fire emergency, you will be notified by the sound of the fire alarm and/or staff.  In an emergency situation where the unit may need evacuated, the Unit Officer will order all inmates to cuff up prior to be taken out of their cell.  Upon evacuation, you will be escorted to a temporary holding area until the unit has been cleared for return.

Simulated fire drills will be conducted quarterly in all units by staff.  This is to familiarize staff with emergency procedures.

Covering ceiling lights with any type of material (paper, blankets, etc.) and the accumulation of newspapers, magazines, books, etc., creates a fire hazard.  Items will be confiscated and disciplinary action may be taken.

SMU A&O Handbook USP LEWISBURG

**Environmental**

All cells in the unit are lead and asbestos free.  Lighting and ventilation requirements in cells meet ACA standards.  The water you drink and use is safe and meets EPA standards.

**Safety**

Any unsafe or unhealthful condition may be reported to the Unit Manager, Environmental and Safety Compliance Administrator, or Warden.

## CLOTHING/LINEN

Inmates will be issued a numbered laundry bag.  The laundry bag will contain three (3) pairs of boxer shorts, three (3) t-shirts, two (2) towels, three (3) pairs of socks, two (2) sheets, two (2) pillowcases, and two (2) blankets.  Inmates are responsible for these items.  To have laundry cleaned, place the items in the bag, and give it to the Evening Watch Unit Officer after the evening meal on Sunday, Tuesday, and Thursday.  Laundry will be returned the next day.  Sheets and blankets should also be placed in the laundry bag for cleaning.

## EXERCISE

Inmates will be offered five (5) hours of recreation per week.  If the inmate refuses recreation when the recreation area is available, he will be considered as having refused his recreation for that day.  Inmates are not allowed to choose recreation partners.

## SMU EDUCATION PROGRAMS

**Law Library/Legal Material**

Inmates are permitted one cubic foot of legal materials in their cell.

**Law Library**

Each housing unit is equipped with an Electronic Law Library (ELL) for inmate use.  Inmates must submit a request to the Unit Block Officer to use the ELL.

Once inmates are logged into ELL, they will have access for 2 hours.  After 2 hours, they will be logged out automatically and be required to wait a mandatory 30 minutes before being allowed to log back in.

To familiarize inmates on the new ELL system there is a "help" button on the open page which has a self-paced tutorial.  Additionally, a copy of the ELL Training Manual may be accessed in the Bulletin Board section of the ELL.

Information not in the ELL may be requested from the main institution law library by submitting a Legal Materials Request Form, a standard Inmate Request to Staff Member form (cop-out) or by writing your request on a blank sheet of paper and sending it to the Main Law Library through the institution mail system.

Institutional Supplements, along with Law Library request forms and information, and Central Office notices are maintained on the ELL computer under the Bulletin Board section and may be viewed there.

All required legal materials are available on the main part of the ELL computer.  This includes (but is not limited to) Federal and DC case law, legal reference materials, legal forms, court addresses and all other required legal materials as mandated by Federal law and Bureau of Prisons policy. State Law is NOT on the ELL computer.

## SMU A&O Handbook USP LEWISBURG

**NOTE**:  The Education Department and Law Library do not supply any reference materials (dictionaries, thesauruses, phone books, etc.), pencils, paper, or other supplies to the SMU Units.

**Legal Material**

Inmates may request copies of their legal materials by submitting a Legal Materials Request Form, a standard Inmate Request to Staff Member for (cop-out) or by writing your request on a blank sheet of paper and sending it to the Main Law Library through the institution mail system.

When making your request, please state as specifically as possible, the item(s) for which you are requesting.  (For Example: Four (4) copies of all legal materials front and back.)  Your request must be printed legibly and include your last name and full inmate number.  All fasteners (to include staples, tape, stickers, paper clips, etc.) must be removed from your legal paperwork prior to submission.  Failure to comply will result in your legal items being returned to you uncompleted.

Copies will be made of **legal materials only** and you must provide proof of a legal need for copies as laid out in Program Statement 1315.07, Legal Activities, Inmate, which states on page 13: "The institution staff shall, upon an inmate's request and at times scheduled by staff, duplicate legal documents if the inmate demonstrates that more than one copy must be submitted to court and that the duplication cannot be accomplished by use of carbon paper. The inmate shall bear the cost and the duplication shall be done so as not to interfere with regular institution operations.  Staff may waive the cost if the inmate is without funds or if the material to be duplicated is minimal and the inmate's requests for duplication are not large or excessive."

NOTE: Carbon paper is no longer available due to security concerns.

Copies will only be reproduced on one side of standard 8½" x 11" copy paper and the Library will not honor any requests for enlargements and/ or reductions of your legal materials.  In order to help maintain acceptable levels of legal materials, there is a LIMIT OF 5 COPIES per page unless you can provide a written court mandated need for more.  Also, the Library WILL NOT make copies of BLANK LEGAL FORMS, these items are not considered to be legal in nature until something is written on the form.

Accommodations will be made for legal copies to those inmates with a verified imminent court deadline.  An imminent court deadline is a deadline within seven days or less and you must provide written proof of such deadline.

In the event that you are on indigent status (inmates lacking funds) and need items printed off of the ELL computer, you may request an **Indigent Inmate Request for Printed Legal Pages form** from the Main Law Library.  Please read and carefully follow the directions before completing the form in its entirety.  A verification of indigent status will be completed prior to fulfilling the request.

NOTE: Inmates on encumbered status are not indigent.

All inmates, including indigent inmates, will be required to legibly sign a pre-completed form BP-199.045 (Request for Withdrawal of Inmate Personal Funds) in the amount for which it cost to complete the copies.  This form will be provided to the inmate by the Law Library Staff (or its representative when the completed copied are delivered.  **All copies cost $0.15 per page.**  When signing the form BP-199, **please provide your signature only** on the designated line.  No political statements, nicknames or other written statements will be accepted.  If you fail to abide by this rule, you WILL NOT receive your requested copies and an incident report may be written.  Additionally, any inmate who **refuses to sign the form BP-199** WILL NOT receive his requested copies and an incident report may be written for your refusal to pay.

Delivery of legal copies and indigent printouts are customarily provided to all units once a week (usually on a Wednesday morning).  The amount of time it takes to receive materials depends on many factors including, but not limited to, available resources, institutional needs, date of submission, and the competitive needs of all inmates.  No deliveries will be made on legal holidays or weekends.

**Typewriters**

No typewriters will be made available for inmate use in the SMU Program.  Inmates requesting materials to be typed are encouraged to contact typing services outside the institution to prepare their legal work

**LEISURE LIBRARY**

1.     **Services Available**

  a.  Levels One, Two, and Three inmates have book carts/shelves on each floor in their units.

  b.  Book titles are limited to what is available on the cart/shelf.  No requests will be accepted for specific book titles.

  c.  Books are rotated approximately every 60 days.

  d.  Books are handed out by the Unit Officers with the established unit schedules.

**Leisure Time Programs/Recreation**

1.     **Services Available**

  a.  Inmates housed in the SMU Program will be provided the opportunity to participate in recreational in-cell activities.  These activities will be in the form of handouts.  To receive credit for individual participation, inmates must complete the series of activities within the allotted time.  The activities will be handed out and collected by Recreation staff.  If any recreation material is damaged, altered, or lost, the inmate will receive an incident report which may result in an adjustment of the delivery of recreation materials to the inmate.

**Literacy Program**

In order to be considered as participating in Education programming to advance through the SMU program, inmates must continuously participate in at least one (1) of the following programs offered:

- Literacy Program

- GED

- Pre-GED

- Spanish GED

- Special Learning Needs

- English as a Second Language

- Adult Continuing Education and Radio Courses

- Post-secondary College Correspondence Courses

**\*\* Failure to participate in the above programs can negatively affect your advancement through the SMU program. \*\***

**Literacy**

**Enrollment Requirement:**  Inmates who do not show proof of a high school diploma or GED are required to attend a mandatory 240 hour GED program.

**English as a Second Language (ESL)**

**Enrollment Requirement:**  Mandatory for non-English speaking inmates.

18

**Background:** The Crime Control Act of 1990 requires that non-English speaking federal prisoners participate in an ESL program until they functi[on] at a minimum of the 8.0 grade level on the CASAS examination.

The purpose of the ESL class is to provide the student with the opportunity to develop effective English language skills.

Participation in the program is mandatory for all non-English speaking inmates unless they have an INS detainer on file, as verified by their Case Manager.  However, the Education Department encourages all non-English speaking inmates to participate in the program.

Once enrolled, inmates who do not complete their assigned work two (2) consecutive times will be dropped from the ESL program and listed as "refused" participation.  Once dropped, the inmate will remain out of the program for a minimum of 2 months/60 days.  It will be the responsibility o[f] the inmates to contact the Education Department for reenrollment after 2 months/60 days has expired.

**Official Testing**

Official GED testing and CASAS Certification testing is a privilege in the SMU program.  Inmates, who demonstrate successful completion of all assignments, passing scores on practice tests and with recommendation from their instructor, will be placed on the Official GED Exam waiting list. Official GED testing will only be administered in the Education Department to eligible inmates who are housed in a Phase three Step-down unit.

**Violent Crime Control and Law Enforcement Act/Prison Litigation Reform Act (VCCLEA/PLRA)**

VCCLEA applies to an inmate whose offense occurred on or after      September 13, 1994, but before April 26, 1996.  PLRA applies to inmates whose offense occurred on or after April 26, 1996.  Both laws, (VCCLEA and PLRA), mandate inmates who do not possess a GED or high school diploma, must satisfactorily participate in the literacy program for a minimum of 240 hours or until attainment of a GED.  Failure to do so will result being coded as GED UNSAT and may affect the inmate's Good Conduct Time (GCT) by 12 days per year.

Inmates determined to be in need of the literacy program (and sentenced under VCCLEA/PLRA) will be provided in-cell assignments and mate-rial appropriate for their placement.  Inmates enrolled in the literacy program will be normally visited once a week by an Education staff member to pick-up, distribute, and answer questions on their assigned work.  The amount of time it takes to receive materials depends on many factors including available resources, institutional needs, and the competitive needs of all inmates.  Inmates who do not complete their assigned work two (2) consecutive times will be dropped from the literacy program, listed as "refused" participation and coded appropriately.  Once dropped, they will remain out of the program for a minimum of 2 months/60 days.  It will be the responsibility of the inmates to contact the Education Department for [re]enrollment after 2 months/60 days has expired.

**Educational Good Time Sentence Credit for D.C. Offenders (DCEGT)**

This credit is authorized by the District of Columbia (D.C.) Code and reduces the amount of time to serve under a term of imprisonment.  The policy applies to D.C. code offenders in Bureau custody who committed their offenses before August 5, 2000, and completed designated educatio[n] programs successfully while in Bureau custody on or after August 5, 1997.  It is the inmate's responsibility to submit a cop-out to staff requesting th[e] DCEGT be applied to their sentence.  This should be done after the completion of an eligible program.

**GED/ESL Incentive:**

      a.        Inmates advancing from reading to Pre-GED to GED will receive a Certificate of Academic Achievement.

      b.        Each student completing the Literacy Program/GED/ESL will receive a Certificate of Completion.

      c.        Due to the special circumstances of the Special Management Unit program at USP Lewisburg, a formal graduation cer-emony will be given for Cadre inmates only.

**Adult Continuing Education (ACE)**

Adult Continuing Education (ACE) courses are offered to the entire inmate population without restrictions on educational level.  ACE courses are rotated on a two (2) month basis and are broadcast over 88.5 SMU Radio.

ACE Radio program packet information will be distributed to each cell every two (2) months.  Every week an Education staff member will make rounds to pick up ACE packet answer sheets.

Any requests, questions, or concerns need to be submitted to Educational staff in writing.  The amount of time it takes to receive materials depends on many factors including available resources, institutional needs, and competitive needs of all inmates.  In order to be considered as participating in the ACE SMU Radio Program, inmates must complete all four courses offered every two (2) months.

If the ACE packet is lost or damaged inmates may print or copy a new packet from the Electronic Law Library/Local Documents.

A certificate of SMU Radio course completion will be issued by the Education/Recreation Department upon successful completion of each level of advancement.  This certificate will highlight all of the radio courses that were completed within the previous level.

### Post-Secondary Education (PSE)

**Enrollment Requirement:**  Verified GED or high school diploma.

Inmates who wish to enroll in Education related correspondence courses must first receive approval from the Supervisor of Education (SOE).  To obtain approval for enrollment in a correspondence course, the requesting inmate must complete an Application for Correspondence Study Approval Form and attach copies of any information related to the course requested.  If the correspondence course is determined to be suitable, an Authorization to Receive Package or Property form will be completed and the requesting inmate will be notified of approval.  Any correspondence course material that is received prior to approval will be returned to sender.  The costs of enrollment in the requested correspondence course will be the responsibility of the requesting inmate.

Inmates who do not complete their assigned work assignments or receive two (2) consecutive non-participation responses from the school will be dropped from the PSE program and listed as "refused" participation.

### Exploratory Vocational Training (VT)

**Enrollment Requirement:**  Verified GED or high school diploma.

**Custodial Maintenance -** This course is designed to utilize the course work and materials given in preparation for re-entry into the workforce.  You will learn basic maintenance and custodial skills through a Vocational Training approach.  Upon completion, you will receive 50 exploratory credit hours on your SENTRY Educational transcript.

**Computer Applications -** This course is designed to utilize your skills in preparation for re-entry into the workforce.  You will learn basic computer skills along with employability skills through a Vocational Training approach.  Upon completion, you will receive 50 credit hours on your Educational transcript.

### Parenting

The Parenting Radio program packet information will be distributed to each cell every two (2) months.  All SMU inmates may participate in the program.  Every week an Education staff member will make rounds to pick up Parenting answer sheets.

Any requests, questions, or concerns, need to be submitted to Educational staff in writing.  This program is separate from other education programming and does not count towards the SMU education advancement requirement.  The amount of time it takes to receive materials depends on many factors including available resources, institutional needs, and competitive needs of all inmates.

If the Parenting packet is lost or damaged, inmates may print or copy a new packet from the Electronic Law Library/Local Documents.  Once the exams are graded and a passing score achieved, inmates will receive hours of credit on their education transcript.

### Discipline

Inmates receiving an incident report as a result of any action involving the Education Department or Education staff, will be immediately removed from all education programming for a minimum of 2 months/60 days and coded appropriately.  It will be the responsibility of the inmate to contact the Education Department for reenrollment after 2 months/60 days has expired.

20

**REENTRY AFFAIRS**

USP Lewisburg's Reentry Affairs Department offers the Special Management Unit (SMU) population the opportunity to request individualized reentry packets containing information such as food banks, clothing banks, homeless shelters, and addresses for the Social Security Office, Department of Motor Vehicles, etc., that may be close to their release residence listed in their file. Inmates qualify for this service if their projected release date is within 18 months. To request this service, a Request to Staff Member may be submitted to the Reentry Department.

The Reentry Department is actively trying to identify the veteran inmates and provide them with a packet of information from the Department of Veteran Affairs. If any SMU inmate is prior service and feels they are entitled to this service or has a question related to their veteran benefits, a request should be placed to the Reentry Department.

Effective December 12, 2017, the Social Security Administration has distributed a memorandum to prison officials regarding the misconception of cash benefits they may receive based upon their ex-offender status once they are released from prison. To resolve this misconception the following statement has been made:

"SSA does not pay Social Security or Supplemental Security Income (SSI) to former inmates solely because they were incarcerated. Ex-offenders, as with all individuals, may apply for Social Security benefits such as Social Security Disability (SSD), as well as Retirement and Survivor benefits... For those inmates who were receiving Social Security or SSI benefits before their incarceration, benefit reinstatement is not automatic. Upon release, the individual should visit a local Social Security office with their release papers. Additional, a new application, and medical decision may be required."

The following pamphlets may be found on Trulincs for further information and guidance to apply for these benefits:

- *What Prisoners Need to Know About Social Security (Publication 05-10133)*

- *Entering the Community After Incarceration - How We Can Help (Publication 05-10504)*

Due to the limitations and regulations for each state, the Reentry Department is challenged with assisting the SMU inmate population with obtaining or renewing their driver's license. Some states mail a camera card to the individual's residence if their license is set to expire. The best recommendation would be to ask the individual's family to return the camera card with a payment, if their state allows. Continued recommendations for the Department of Motor Vehicles, is to write or have a family member call the National Driver's Registrar to determine if the questioning individual's license is suspended or revoked. The offender in this situation should be able to acknowledge and begin serving their suspension once this information is known. It is also important to remember if the individual has child support, they will continue to be responsible for their payments unless their state has acknowledged and provided them with a waiver for payments. Not making an effort to make their payment can go against them when they attempt to obtain their driver's license.

While in prison, the offender is strongly encouraged to obtain their social security card and birth certificate. Individuals can obtain up to 10 free social security cards in a life time. The requesting individual will be responsible for paying for a copy of their birth certificate. This cost will be dependent on the state they are requesting the vital document from. Please contact a Unit Team member to assist with any questions in this matter.

For any additional questions that are related to reentry, you may submit a cop-out request to the Reentry Department. All inmates are strongly encouraged to utilize their time appropriately and actively participate in the programming that is offered through the various departments as a means of support.

**HEALTH SERVICES DEPARTMENT**

### Medical Services

All inmates in the SMU program will be seen by medical staff on a daily basis. SMU Level One, Two, and Three inmates will be seen cell side by a medical staff member on a daily basis. Every pre-caution will be made to maintain patient privacy. When deemed necessary, an inmate may be removed to the medical room or department for further intervention(s). Medical staff making rounds will attempt to establish verbal contact with each inmate. All inmates requesting to see either a physician or a dentist will be scheduled with the appropriate clinician after evaluation by the clinician during his/her rounds. Only conditions deemed emergent will be managed immediately by the clinician. No routine sick call will be held on weekends or holidays; however, a Primary Care Provider (PCP) may schedule routine evaluations during weekend hours at his/her discretion. Specialty clinics are held at least annually to maintain proper medical treatment for those who require regular clinical follow-up.